PEOPLE v NELSON

1. CRIMINAL LAW—MULTIPLE CONVICTIONS—SINGLE CRIMINAL EPISODE
—DOUBLE JEOPARDY.

Two convictions arising from a single criminal episode may be
permissible; however, two convictions are not permissible if one
of the offenses is a lesser included offense of the other, or if two
successive prosecutions are involved; and the one-transaction
test must be applied to determine which offenses must be joined
for purposes of avoiding double jeopardy.

2. CRIMINAL LAW—STATUTES—CRIMINAL SEXUAL CONDUCT STATUTE—
RAPE—SEPARATE OFFENSES—LEGISLATIVE PURPOSE.

An interpretation which allows each of the listed special circum-
stances in the criminal sexual conduct statute to form the basis
for a separate offense and conviction, where the charges against
a defendant arise from a single criminal episode, is consistent
with the legislative purpose of the statute which was to
strengthen the prior law describing unlawful sexual conduct
(MCLA 750.520b; MSA 28.788[2]).

3. CRIMINAL LAW—STATUTES—CRIMINAL SEXUAL CONDUCT STATUTE—
RAPE—RULE OF LENITY—INTENT OF LEGISLATURE.

The so-called rule of lenity should not be applied in interpreta-
tion of the criminal sexual conduct statute because the rule
should not be automatically applied to an area in which legisla-
tive intent is seldom clearly specified and because the back-
ground of the statute suggests that the Legislature was deter-
mined to toughen the prosecution and punishment of sexual
assaults (MCLA 750.520b; MSA 28.788[2]).

4. CRIMINAL LAW—STATUTES—RAPE—SEPARATE OFFENSES—OPTIONS—
PROSECUTOR'S DISCRETION—JUDGE'S DISCRETION—STATUTES.

Prosecutors and judges must use sound discretion in determining

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 189.
[2, 4] 65 Am Jur 2d, Rape § 41.
[3] 6 Am Jur 2d, Assault and Battery §§ 56–58.
[5] 6 Am Jur 2d, Assault and Battery § 64.
    21 Am Jur 2d, Criminal Law § 165.
    65 Am Jur 2d, Rape § 32.

whether to exercise the options' offered by the Legislature where a statute allows several separate convictions and sentences based upon a single criminal episode; this discretion was not abused in a case of a defendant who was convicted of and sentenced on four separate counts under the criminal sexual conduct act where those convictions and sentences punished separately the separate types of harm to the victim and society which the Legislature recognized as important (MCLA 750.520b; MSA 28.788[2]).

5. CRIMINAL LAW—RAPE—CONSTITUTIONAL LAW—DOUBLE JEOPARDY—
   SEPARATE OFFENSES—LESSER INCLUDED OFFENSES—STATUTES.

   A defendant was not twice put in jeopardy when he was charged with several violations of the criminal sexual conduct act, arising from the same criminal transaction, where all of the charges were included in one information and tried in one trial, and where none of the charges were for lesser included offenses of any of the other charges (MCLA 750.520b; MSA 28.788[2]).

Appeal from Recorder's Court of Detroit, Patricia J. Boyle, J. Submitted June 21, 1977, at Detroit. (Docket No. 30773.) Decided October 25, 1977.

John T. Nelson was convicted of four counts of criminal sexual conduct. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Research, Training & Appeals, and *Robert Weisberg,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: BEASLEY, P. J., and V. J. BRENNAN and J. R. McDONALD,* JJ.

BEASLEY, P. J. Defendant was charged with four

* Circuit judge, sitting on the Court of Appeals by assignment.

counts of criminal sexual conduct under the new 1974 statute. [MCLA 750.520b; MSA 28.788(2).] Following a jury verdict of guilty on all four counts, defendant was sentenced to not less than 20 nor more than 40 years imprisonment on each count with the sentences to run concurrently. Defendant now appeals as of right. For the reasons indicated, we affirm.

Defendant first asserts that he was deprived of a fair trial and due process of law when a single criminal incident resulted in his trial on four separate counts of criminal sexual conduct in the first degree. The victim was a seven-year-old girl on her way to school. The evidence indicates that the defendant, whom she identified in court, put a coat around her face and forced her into a vacant house. The defendant was identified also by neighborhood people who saw him running from the house. The charges, as explained by the trial court, were:

"So count one alleges intercourse with a person under the age of thirteen. Count two alleges intercourse while the defendant was allegedly armed with a weapon. Count three alleges fellatio with a person under the age of thirteen; and count four alleges fellatio with the defendant allegedly then and there armed with a weapon or an article used or fashioned in a manner to lead a person to reasonably believe it to be a weapon."

There is no need to recite the evidence at length since clearly there was sufficient evidence to support a conviction on each of the four counts.

The statute in question provides:

"(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(a) That other person is under 13 years of age.

(b) The other person is at least 13 but less than 16 years of age and the actor is a member of the same household as the victim, the actor is related to the victim by blood or affinity to the fourth degree to the victim, or the actor is in a position of authority over the victim and used this authority to coerce the victim to submit.

(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

(d) The actor is aided or abetted by 1 or more other persons and either of the following circumstances exists:

(i) The actor knows or has reason to know that the victim is mentally defective, mentally incapacitated or physically helpless.

(ii) The actor uses force or coercion to accomplish the sexual penetration. Force or coercion includes but is not limited to any of the circumstances listed in subdivision (f)(i) to (v).

(e) The actor is armed with a weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a weapon.

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration. Force or coercion includes but is not limited to any of the following circumstances:

(i) When the actor overcomes the victim through the actual application of physical force or physical violence.

(ii) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(iii) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat. As used in this subdivision, "to retaliate" includes threats of physical punishment, kidnapping, or extortion.

(iv) When the actor engages in the medical treatment or examination of the victim in a manner or for pur-

poses which are medically recognized as unethical or unacceptable.

(v) When the actor, through concealment or by the element of surprise, is able to overcome the victim.

(g) The actor causes personal injury to the victim, and the actor knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless.

(2) Criminal sexual conduct in the first degree is a felony punishable by imprisonment in the state prison for life or for any term of years."[1]

On appeal, defendant says that this statute should *not* be interpreted to mean that if, in a single episode or event, a defendant accomplishes several penetrations, each unlawful under the statute, he is guilty of a separate felony for each. Thus, defendant would say that the illegal sexual intercourse and the illegal fellatio, occurring on the same occasion, constituted one and only one felony. In addition, although the statute defines both sexual intercourse with a person under 13 years of age and sexual intercourse while armed with a weapon, or any article used or fashioned in a manner to lead the victim to believe it to be a weapon, as criminal sexual conduct in the first degree, defendant says that, where a defendant commits one act of sexual intercourse with a person under 13 years of age and while armed in the manner described in the statute, the statute should be interpreted to mean that only one felony has been committed. Last, defendant says that, in any event, the prosecutor should have been compelled to elect on which count he would go to the jury.

Thus, the principal issue here is whether, under the new criminal sexual conduct statute, a single

---

[1] MCLA 750.520b; MSA 28.788(2).

sexual penetration, accompanied by more than one of the statute's enumerated special circumstances, can result in two distinct criminal charges for purposes of trial, conviction and sentencing. As will be set forth more fully below, it is our conclusion that this issue is not answered automatically in the affirmative based upon present case law, that this issue does not lend itself to easy resolution by the application of labels, that this issue is controlled by a determination of legislative intent, that legislative intent is seldom explicitly made known on this subject either in statutory language or in legislative history, that the legislative intent can be deduced from the overall purpose and background of a statute, that such deduction here demonstrates an intent to tighten the legislative provisions regarding criminal sexual conduct, that, consistent with that intent, the statute should be interpreted to protect the separate interests of the victim and society by punishing separately each violation of one of those separate interests, and that this interpretation is constitutional unless double jeopardy receives a judicially expanded interpretation.

To place this issue in proper perspective, we quote the words of former Chief Justice Earl Warren:

"The problem of multiple punishment is a vexing and recurring one. It arises in one of two broad contexts: (a) a statute or a portion thereof proscribes designated conduct, and the question is whether the defendant's conduct constitutes more than one violation of this proscription. Thus, murdering two people simultaneously might well warrant two punishments but stealing two one-dollar bills might not. (b) Two statutes or two portions of a single statute proscribe certain conduct, and the question is whether the defendant can be punished twice because his conduct violates both pro-

scriptions. Thus, selling liquor on a Sunday might warrant two punishments for violating a prohibition law and a blue law, but feloniously entering a bank and robbing a bank, though violative of two statutes, might warrant but a single punishment.

*"In every instance the problem is to ascertain what the legislature intended. Often the inquiry produces few if any enlightening results. Normally these are not problems that receive explicit legislative consideration. But this fact should not lead the judiciary, charged with the obligation of construing these statutes, to settle such questions by the easy application of stereotyped formulae.* It is at the same time too easy and too arbitrary to apply a presumption for or against multiple punishment in all cases or even to do so one way in one class of cases and the other way in another. Placing a case in the category of unit-of-offense problems or the category of overlapping-statute problems may point up the issue, but it does not resolve it." (Emphasis added.)[2]

Chief Justice Warren's words come from a dissent; he, himself, had written for the majority in a prior case which held that only one punishment was proper in prosecutions of a single bank robbery under the Federal Bank Robbery Act.[3] However, no matter what his personal view of a particular case may have been, his words make clear that he recognized both the complex nature of the problem and the fact that seemingly logical, but simplistic, solutions were of no assistance even though they might be enticing for determining legislative intent or constitutional limitations for a case at hand.

Chief Justice Warren also emphasizes the reason why resort is so often made to stereotyped formu-

[2] *Gore v United States,* 357 US 386, 393–394; 78 S Ct 1280, 1285; 2 L Ed 2d 1405, 1411 (1958) (Warren, C. J., dissenting). *See generally,* Kirchheimer, *The Act, The Offense and Double Jeopardy,* 58 Yale L J 513 (1949).

[3] *Prince v United States,* 352 US 322; 77 S Ct 403; 1 L Ed 2d 370 (1957).

lae. That reason is that legislative intent, although all important, is very difficult to determine especially since the possibility of multiple punishment[4] seldom receives explicit legislative consideration. In such situations, stereotyped formulae come readily to hand under the guise of statutes of construction,[5] categories of problems, or rules of universal application. As Chief Justice Warren notes, such solutions merely restate, rather than solve, the problem.

An outline of *Gore's* facts underlines its appropriateness to the issue now presented. Gore was charged with six counts for narcotics offenses; two sales of narcotics each formed the basis of three counts.[6] Conviction on all counts followed a trial by jury, and Gore was sentenced to one to five years on each count with the sentences on the first three counts to run consecutively with those on the second three; in effect, the sentence was for 3 to 15 years. Gore attacked the legality of his sentences, and the Supreme Court affirmed.

In reaching its affirmance, the Court addressed

[4] Although, for purposes of adjudication of constitutionality, multiple punishment is the popularly used expression, it should be recognized that so stating the issue ignores the other purposes of sentencing such as protection of society and rehabilitation.

[5] For examples of statutes of construction arranged for selection on the basis of desired results, *see* Llewellyn, *The Common Law Tradition,* (Little, Brown and Company, 1960), p 521 *et seq.*

[6] "Counts One and Four charged the sale of the drugs, on the respective dates, not 'in pursuance of a written order' of the person to whom the drugs were sold on the requisite Treasury form, in violation of § 4705(a) of the Internal Revenue Code of 1954. Counts Two and Five charged the sale and distribution of the drugs on the respective dates not 'in the original stamped package or from the original stamped package', in violation of § 4704(a) of the Internal Revenue Code of 1954. Counts Three and Six charged facilitating concealment and sale of the drugs on the respective dates, with knowledge that the drugs had been unlawfully imported, in violation of § 2(c) of the Narcotic Drugs Import and Export Act, as amended by the Act of November 2, 1951, 65 Stat 767." *Gore v United States,* 357 US 386, 387; 78 S Ct 1280, 1281–1282; 2 L Ed 2d 1405, 1407 (1958). (Footnote omitted.)

two issues pertinent to the instant case. First, the Court, with Justice Frankfurter writing, examined the legislation and legislative intent, especially in light of their prior decision in *Blockburger v United States.*[7]

"That the *Blockburger* opinion did not lay out with particularity the course of anti-narcotics legislation is scant basis for suggesting that the Court was unaware of it or did not duly heed the relevant criteria for statutory construction in dealing with the specific legislation before it. The Court was not an innocent in the history of narcotics legislation. *Blockburger* was not the first case that brought prosecutions under successive enactments dealing with the control of narcotics before the Court. At the time of *Blockburger,* it was not customary to make the whole legislative history connected with particular statutes in adjudication part of the conventional apparatus of an opinion. What is more to the point about the *Blockburger* decision is that the unanimous Court that rendered it then included three Justices conspicuous for their alertness in safeguarding the interests of defendants in criminal cases and in their insistence on the compassionate regard for such interests. Invidiousness is not implied in saying that Mr. Justice Brandeis, Mr. Justice Butler and Mr. Justice Roberts would not have joined in finding that Congress established independent curbs as tactical details in the strategy against illicit narcotics trade, if it could be reasonably maintained that what in fact Congress was doing was merely giving different labels to the same thing. The fact that an offender violates by a single transaction several regulatory controls devised by Congress as means for dealing with a social evil as deleterious as it is difficult to combat does not make the several different regulatory controls single and identic.

\* \* \*

"Of course, the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grap-

[7] 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932).

pling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter.

\* \* \*

"This situation is *toto coelo* different from the one that led to our decision in *Bell v United States,* 349 US 81 [75 S Ct 620; 99 L Ed 905 (1955)]. That case involved application of the Mann Act—a single provision making it a crime to transport a woman in interstate commerce for purposes of prostitution. We held that the transportation of more than one woman as a single transaction is to be dealt with as a single offense, for the reason that when Congress has not explicitly stated what the unit of offense is, the doubt will be judicially resolved in favor of lenity. It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle more and more by different legal devices, the traffic in narcotics. Both in the unfolding of the substantive provisions of law and in the scale of punishments, *Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws.*" (Footnote omitted, emphasis added.)[8]

The Court also addressed the double jeopardy implications of the multiple convictions and sentences. The Court decided that the claim did not fit within the historical concept of double jeopardy and it stated that the historical concept was controlling because double jeopardy, unlike due process, was not an evolving concept.[9]

Having reviewed legislative intent and double

[8] 357 US at 388–391.

[9] 357 US at 392. Double jeopardy will be further discussed herein.

jeopardy questions, the majority in *Gore* make one further argument which touches both of the preceding. That argument is that the appeal of the question presented really constituted an invitation for the judiciary to review the sentence. The proper apportionment of punishment, according to the Court, is primarily a matter of legislative policy and such review is not within the power of the Court.[10]

As could be inferred from the words of the former Chief Justice, the Supreme Court has decided the issue in *Gore* in different ways depending upon the factual and legal context in which the issue is present. For example, in interpreting the various provisions of the Federal Bank Robbery Act,[11] only one conviction is proper for a given bank robbery.[12] Already noted in a preceding quotation is the same result in regard to the Mann Act.[13] However, in regard to charges of conspiring to violate[14] and violating the Organized Crime Control Act of 1970,[15] the Court upheld convictions on both charges.[16] The key to all the cases was the finding regarding legislative intent. And, if legislative intent was not explicit, the Court stated that the presumption would be against turning a single transaction into multiple offenses—the so-called rule of lenity.[17]

Prior Michigan law has also affirmed two convic-

---

[10] 357 US at 393.

[11] 18 USC 2113.

[12] *Prince v United States,* n 3, *supra.*

[13] 18 USC 2421; *Bell v United States,* 349 US 81; 75 S Ct 620; 99 L Ed 905 (1955).

[14] 18 USC 371.

[15] 18 USC 1955.

[16] *Iannelli v United States,* 420 US 770; 95 S Ct 1284; 43 L Ed 2d 616 (1975).

[17] *Bell v United States,* n 13, *supra,* 349 US at 84.

tions arising from one criminal episode.[18] The two convictions were for assault with intent to commit unarmed robbery[19] and for assault with intent to do great bodily harm less than the crime of murder.[20] However, Michigan law is also clear that two convictions are not permissible if one of the offenses is a lesser included offense of the other,[21] or if two successive prosecutions are involved.[22] In addition, it is clear that the one-transaction test must be applied to determine which offenses must be joined for double jeopardy purposes.[23]

The sentences here appear to be within the range of sentences normally given for these offenses; therefore, we do not deem it necessary to give separate treatment to a cruel or unusual punishment type question. Moreover, the offenses charged in this case are not lesser included offenses of each other. Under *Compian, Gore,* etc., *supra,* multiple convictions would, therefore, be possible. However, the rationale of those cases also makes clear that such a holding should be based upon a finding of a like legislative intent, and it is to the determination of that intent that we now turn.

The background for that legislative intent includes, for a start, the "old", now repealed, rape statute which provided:

"Any person who shall ravish and carnally know any

---

[18] *People v Compian,* 38 Mich App 289; 196 NW2d 353 (1972), *lv den, sub nom People v Kondakor,* 387 Mich 790 (1972). The result in *Compian* has since been approved by this Court. *People v Bennett,* 71 Mich App 246, 248; 247 NW2d 368 (1976).

[19] MCLA 750.88; MSA 28.283.

[20] MCLA 750.84; MSA 28.279.

[21] *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976); *People v Stewart (On Rehearing),* 400 Mich 540; 256 NW2d 31 (1977).

[22] *People v White,* 390 Mich 245; 212 NW2d 222 (1973).

[23] *People v White,* 390 Mich 245; 212 NW2d 222 (1973); *Crampton v 54-A District Judge,* 397 Mich 489; 245 NW2d 28 (1976).

female of the age of 16 years, or more, by force and against her will, or who shall unlawfully and carnally know and abuse any female under the full age of 16 years, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years, or if such person was at the time of the said offense a sexually delinquent person, may be punishable by imprisonment in the state prison for an indeterminate term, the minimum of which shall be 1 day and the maximum of which shall be life. Such carnal knowledge shall be deemed complete upon proof of any sexual penetration however slight."[24]

The foregoing statute included both common law (forcible) rape and statutory (carnal knowledge with female under 16 whether or not with consent) rape. In practice, prosecutors charged defendants either with so-called common law rape or with statutory rape, but very seldom with both in one case.[25]

Wide-spread dissatisfaction arose under the old rape statute. It was felt that often the victim was treated more harshly in trial than the rapist. Eventually, in 1974, those believing change was desirable succeeded in persuading the Legislature to repeal the existing rape statute and to enact what are described as the criminal sexual conduct statutes.

This referenced dissatisfaction is summarized by the analysis prepared for Senate Bill 1207 (introduced 2/28/74) as of June 27, 1974:[26]

"Rape is increasing more rapidly than any crime in the United States. The F.B.I. reports that the incidence

---

[24] 1952 PA 73. Repealed by 1974 PA 266, effective April 1, 1975.

[25] For an exception, *see, People v Perry,* 232 Mich 433; 205 NW 151 (1925).

[26] Senate Bill 1207 is also the designation of the Criminal Sexual Conduct statute as an enrolled act.

of rape has increased 70% over the past 5 years. One out of 500 Michigan women living in urban areas will be raped this year. However, some contend that Michigan law provides little protection or deterrent against rape and even discourages victims from reporting rape. Specific problems in the existing rape law are as follows: * * * ." .

This analysis refers to "some [who] contend that Michigan law provides little protection or deterrent against rape and even discourages victims from reporting rape". A review of the whole analysis and of the history of Senate Bill 1207 will not only make clear who those "some" were, but will also assist in the understanding of the resulting criminal sexual conduct statute.

Senate Bill 1207 was one step in a process that began, as a separate effort not connected with reform of the whole criminal code, when the Michigan Women's Taskforce on Rape submitted detailed proposals to the judiciary committee of the Michigan House of Representatives.[27] During that

---

[27] These proposals were first submitted by letter, then formally presented by members of the taskforce to a meeting of the House Judiciary Committee held on November 14, 1973, and then were put in final form for the committee and Senator Byker in January, 1974. The proposals included suggested statutory language, copies of similar proposals being made for amendment of the criminal code in Washington, D. C., and statistics outlining the problem. In addition, the taskforce continued to provide input to the House and Senate throughout the time that the bills were being considered. Some of this input was at the direct request of members and committees of the Legislature. Although much of this input cannot be considered legislative history (because much of it was never presented to the full Legislature), nevertheless, it is important in the sense that the whole Legislature was aware, in a general way, of the group's efforts, and it did recognize the pressure being exerted by this and the associated groups (position papers were filed, for example, by the National Organization of Women and by the Michigan Nurses Association). This pressure, and the additional time pressure which arose from the group's effort to enact the legislation prior to the summer of 1974 (the summer months were said to represent the so-called "rape season"), explain some aspects of the statute's structure and wording; perfect interweaving with the whole of the existing law is not to be expected

hearing, the then chairman of the judiciary committee indicated a desire that the proposals serve as a vehicle by which to arrive at a consensus on the new law.[28] On February 28, 1974, bills were introduced in both the House and Senate.[29] A review of the proposals, the initial bills and the final resulting act makes clear that the Legislature was being requested to make, and did make, major changes in the Michigan law pertaining to criminal sexual conduct. It is also clear that the thrust of these changes included an effort to strengthen the existing laws.

As distinguished from the old rape statute, which contained a broad, general description of the proscribed conduct, the new criminal sexual conduct statute spells out in some detail the proscribed conduct. Nowhere in the new statute does the word "rape", or the old definition "ravish and carnally know * * * by force and against her will", appear. This absence is not an oversight; on the contrary, it is indication of the new concept of what constitutes criminal sexual conduct.

The purpose is to greatly reduce any possibility that alleged consent of a victim is, in trial, a matter of defense. In fact, in one law reporter, the new statute is described as "the pro-victim Michigan statute".[30] If sexual intercourse is accompanied by any of the circumstances defined in sub-sections (a) through (g) of § 520a, it is criminal sexual conduct in the first degree, the maximum punish-

under such pressured circumstances, especially when the existing law on one subject is being changed so drastically.

[28] The State Journal (Lansing), November 15, 1973, p D-1, quoting Representative J. Bob Traxler, who was the chairman of the House Judiciary Committee.

[29] House Bill 5802, Senate Bill 1207 (both introduced February 28, 1974).

[30] Bienen, *Rape II,* 3 Womens Rights Law Reporter 90, 95 (1977).

ment for which is life imprisonment. In addition, the statute sometimes undermines the injection of consent as a defense in the following language:

"Section 520i. A victim need not resist the actor in prosecution under sections 520b to 520g."[31]

The plan of the statute divides criminal sexual conduct into four degrees of seriousness. As measured by potential severity of sentence, criminal sexual conduct of the first degree is the most serious.[32]

First-degree criminal sexual conduct is defined as sexual penetration with another person accom-

[31] MCLA 750.520i; MSA 28.788(9). This section, and the sections that it references, should be read in the context of the expressed legislative intent for this Act. For example, the analysis section of the House Judiciary Committee prepared the following analysis of Senate Bill 1207 as of June 27, 1974:

"*The Apparent Problem to Which the Bill Addresses Itself:*

\* \* \*

"5. *The Problem of Non-Consent:* Present law requires the prosecution to prove 'beyond a reasonable doubt' that the rape occurred against the will of the victim. Some contend that it is almost impossible to prove the state of a person's mind, especially since rape is generally a private crime.

\* \* \*

"*The Manner in Which the Bill Addresses Itself to the Problem:*

\* \* \*

"5. *Non-Consent:* The bill eliminates the present requirement that the non-consent of the victim must be proved 'beyond a reasonable doubt' at the outset of a 'rape' trial."

One "Argument For" the bill, presented in the same analysis, stated:

"The question as to whether or not the victim 'consented' is not an issue in any felony other than rape. This bill would make the rape standard consistent with the standard for other felonies by allowing the victim to assess rationally the danger of injury or death and conduct herself/himself accordingly. The protection from having to prove non-consent to rape is essential in cases where the victim is mentally or physically helpless or surprised into non-resistance and therefore physically or mentally unable to convey non-consent."

[32] The sentence for first-degree criminal sexual conduct is life or any term of years. MCLA 750.520b(2); MSA 28.788(2)(2).

panied by any one of some seven circumstances.[33] For example, sexual penetration with a person under 13 years of age in violation of sub-section (a) would constitute a complete offense as would sexual penetration with another person where the actor is armed with a weapon in violation of sub-section (e).

In light of the fact that the Legislature was responding to a public demand for tightening up of the criminal laws regarding sexual violence, we are constrained to conclude that, in general, the legislative purpose of the new criminal sexual conduct statute was to strengthen, not weaken, within constitutional strictures, the criminal law describing unlawful sexual conduct. Consistent with that legislative purpose is an interpretation that each listed special circumstance is the basis for a separate offense and conviction. In the example above, sexual intercourse, while armed with a weapon, and sexual intercourse with a child under 13 constituted two separate offenses.[34]

The criminal sexual conduct statute's legislative intent has already been addressed in a prior opinion of this Court.[35] There, in the absence of a clear showing of contrary legislative intent, this Court applied the already mentioned rule of lenity. Here, we decline to apply the rule of lenity for two reasons. First, we hesitate to automatically apply

---

[33] MCLA 750.520b(1)(a)–(g); MSA 28.788(2)(1)(a)–(g).

[34] That is, could be two distinct, separate offenses, if so charged.

[35] *People v Willie Johnson,* 75 Mich App 221, 226–227; 255 NW2d 207 (1977). The Court there said:

"Canons of strict construction and the rule of lenity, in any event, would require that result in the absence of a clear legislative intent to the contrary."

In regard to the criminal sexual conduct statutes, we perceive no legislative intent suggesting a rule of lenity for application to sexual offenses involving children. Canons of strict construction are inapplicable for the same reason.

the rule to an area in which, as Chief Justice Warren noted, legislative intent is seldom clearly specified even on the Federal level where sources of legislative history are far more abundant and readily available than is normally the case in Michigan. Second, as already noted, the background of the criminal sexual conduct statute suggests that the Legislature, rather than expressing lenity in this area, was, in fact, determined to tighten up the criminal machinery which is used to prosecute and punish sexual assaults.

Applied to the instant facts, the foregoing would support four convictions based upon two acts each accompanied by two special circumstances singled out by the Legislature for special treatment. However, this raises the further question of whether the particular facts of this case are such that all the technically possible convictions should be upheld. In *Gore, supra,* the United States Supreme Court noted that even though separate convictions and sentences are possible, prosecutors and judges must exercise sound discretion in determining when the options offered by the Legislature should be exercised.

On the facts of this case, we cannot say that defendant has been the subject of an abuse of that discretion. The victim was a seven-year-old special education student on her way to school. When the Legislature established age 13 as a special circumstance, it recognized as important the very social factors and harms which are emphasized by the facts here. In the same way, the facts here involve innocent by-stander witnesses who very easily could have become entangled in the criminal episode. The special circumstance of a dangerous

weapon, therefore, presented additional danger both to the victim and to others.[36] Given these facts, we cannot say that this defendant can complain if the separate types of harm to the victim and society are separately punished.

However, while we are satisfied that the Michigan Legislature intended to permit charging, convicting and sentencing for each separate offense, and while it is our opinion that this legislative intention is constitutional under present Federal and Michigan law, still we recognize that some of the cases which we have discussed have indicated, in dicta, that double jeopardy should receive an expanded interpretation; such an interpretation could be used to render unconstitutional both the present legislative intent and also any similar

[36] Such special harms were recognized by those supporting the bill: "The new scheme will permit a closer tailoring of the charge to the actual seriousness of the deed in the case at hand, thereby more specifically implementing society's goals in criminalizing the behavior involved. Thus, serious injury coupled with penetration would constitute first degree assault. In the case of a child under twelve, the injury is presumed; in the case of threat with a dangerous weapon, the potential for death justifies removing the injury requirement. So also with the remaining degrees: the seriousness of the offense is determined by the two factors of penetration and injury rather than penetration alone, as under the present law." Legal Effects of Proposed Rape Reform Bills, S. B. 1207, H. B. 5802, prepared by Virginia B. Nordby for the legislative committees.
(The House Judiciary Committee received this analysis on April 23, 1974. However, we do not consider this to be legislative history since the extent of this document's distribution is uncertain.)
The existence of these separate harms leads to a collateral, practical problem. If, from several possible, seemingly equal charges, only one or two convictions are to be allowed, the problem arises as to the most practical method of accomplishing that result. It is easy, for example, to say that alternative jury instructions are to be given by the judge. This, however, simply moves the problem one step back. For example, on what basis should the jury be instructed to prefer one charge over another, especially when the offenses are of equivalent gravity and the respective interests being protected are of equal dignity? Does not any approach invite confusion even if the oral instructions are supplemented with a detailed list of permissible findings? If, instead, we allow the verdicts to be returned on all counts, the possibility of confusion is lessened, but the problem remains in regard to the basis upon which the judge is to sort out the verdicts.

effort. We will, therefore, give further treatment to some of these cases to make explicit the reasons why the cases do not control this case.

The constitutional provisions in question are:
" * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * * ."[37]
"No person shall be subject for the same offense to be twice put in jeopardy."[38]

For example, in *People v White, supra,*[39] the Supreme Court adopted the single transaction test to measure compliance with these double jeopardy provisions of the Federal and state constitutions. The major thrust of the case is to prohibit forcing a defendant to defend more than once criminal prosecutions arising out of one offense and, thus, to require all charges arising out of the offense to be tried in one trial.[40] The reason for reversal in *White, supra,* was that the kidnapping case was tried first and separately from the charges of rape and felonious assault. The subsequent conviction for rape and felonious assault was reversed, but the first conviction for kidnapping was not appealed. Where, as here, all charges against defendant are included in one information and tried in

---

[37] US Const, Am V.

[38] Const 1963, art 1, § 15.

[39] 390 Mich 245; 212 NW2d 222 (1973).

[40] "The use of the same transaction test in Michigan will promote the best interests of justice and sound judicial administration. In a time of over-crowded criminal dockets, prosecutors and judges should attempt to bring to trial a defendant as expeditiously and economically as possible. A far more basic reason for adopting the same transaction test is to prevent harassment of a defendant. The joining of all charges arising out of the same criminal episode at one trial ' * * * will enable a defendant to consider the matter closed and save the costs of redundant litigation.' " 390 Mich 245, 258–259. (Footnote omitted.) Also, *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970).

one trial, we do not consider there is any violation of the rule of the *White* case.

In *North Carolina v Pearce*,[41] holding that the Fifth Amendment guarantee against double jeopardy is enforceable against the states through the Fourteenth Amendment, the United States Supreme Court said:

"That guarantee [against double jeopardy] has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense."[42]

In *Pearce*, the Court cited *Ex Parte Lange*,[43] where the Court said:

" 'If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And * * * there has never been any doubt of [this rule's] entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense.

\* \* \*

" '[T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it.' "[44]

In *People v Martin*,[45] the Michigan Supreme Court cited *Pearce* with approval and proceeded to find that conviction of both delivery of heroin and of the lesser included offense of possession of the same heroin violated the constitutional double

---

[41] 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969).

[42] 395 US at 717.

[43] 85 US (18 Wall) 163; 21 L Ed 872 (1874).

[44] 395 US at 717–718.

[45] 398 Mich 303; 247 NW2d 303 (1976).

jeopardy provision prohibiting multiple punishment for the same offense. For reason of error in the instruction, the *Martin* Court reversed the delivery of heroin conviction and affirmed the possession of heroin conviction, but reserved an option in the prosecutor to accept reversal of both convictions and to re-try on both charges.

More recently, in *People v Stewart (On Rehearing)*,[46] the Supreme Court held that conviction of both sale and possession of the same heroin was constitutionally proscribed double punishment, saying:

"Therefore, from the evidence adduced at this trial, the illegal possession of heroin was obviously a lesser included offense of the illegal sale of heroin. When the jury *in the case at bar* found the defendant guilty of the illegal sale of this heroin, they necessarily found him guilty of possession of the same heroin."[47]

Thus, contrary to the within case, both *Martin* and *Stewart* involve lesser included offenses. In *Jeffers v United States*,[48] the Court said one convicted of the greater offense may not be subjected to a second prosecution for the lesser offense since that would be the equivalent of two trials for *the same offense.* Consequently, it is evident that a defendant cannot, in the same trial, be found guilty of both a crime charged and a lesser included offense of the same crime. But, of course, that is not what happened here. Here, sexual intercourse while armed with a knife is not a lesser included offense of sexual intercourse with a seven-year-old child, nor vice versa. As we have

---

[46] 400 Mich 540; 256 NW2d 31 (1977).

[47] 400 Mich at 548.

[48] *Jeffers v United States,* 432 US 137; 97 S Ct 2207; 53 L Ed 2d 168 (1977).

indicated, the Legislature intended two separate offenses, one sexual intercourse with a child under thirteen and the other sexual intercourse while armed with a dangerous weapon. Similarly, fellatio with a child under 13 is a separate and distinct offense from fellatio while armed with a dangerous weapon.

Thus, we hold that since there are four separate and distinct offenses here, the constitutional prohibition against being twice put in jeopardy *for the same offense* does not apply.

We note that these sentences run concurrently. We express no opinion as to how we would rule if the sentences were imposed to run consecutively. Since we believe the Legislature intended that different violations of the statute be treated separately, even where aspects of the proscribed conduct, *e.g.*, sexual penetration, give rise to more than one offense, we do not find error in the four sentences imposed here.

Defendant also asserts that the prosecutor improperly commented on defendant's failure to testify when the prosecutor stated in his argument that "she [the victim] and the assailant were the only ones that had indication as to what happened in the house and that's why the police were seeking corroborative evidence as to what happened and where". No objection or request for instructions was made. While the quoted portion of the prosecutor's argument does not appear to be improper, in the context of this case, it is unnecessary to determine the effect and meaning of the prosecutor's statement since this issue has not been preserved for appeal.[49]

Affirmed.

---

[49] *People v Robert Hall,* 56 Mich App 10; 223 NW2d 340 (1974); *People v Alcala,* 396 Mich 99; 237 NW2d 475 (1976).