# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
November 1, 2016

v

No. 320867
Roscommon Circuit Court
LC No. 12-006736-FC

WILLIAM FRANK SIKORSKI, JR.,

        Defendant-Appellant.

ON REMAND

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

PER CURIAM.

This case is before us on remand from our Supreme Court for reconsideration of whether defendant's conviction for first-degree criminal sexual conduct (CSC I) in violation of MCL 750.520b(1)(d)(*ii*) (defendant aided or abetted by one or more other persons and force or coercion used to accomplish sexual penetration) was based on the same act of penetration as defendant's conviction under MCL 750.520b(1)(c) (sexual penetration during the commission of another felony), thus violating the double jeopardy protections of the United States and Michigan Constitutions. In re-examining this matter, this Court is to take into consideration the manner in which the jury was instructed as to each count after the close of the proofs. This matter was also remanded for reconsideration of defendant's argument concerning sentencing relief in light of *People v Lockridge*, 498 Mich 358, 870 NW2d 502 (2015). We conclude that there was no double jeopardy violation, that sufficient evidence was adduced to sustain defendant's conviction under MCL 750.520b(1)(d)(ii), and that the scoring of some of the challenged offense variables was based on judicial fact-finding such that remand is necessary. We thus affirm defendant's convictions, but remand for a sentencing hearing as provided.

This Court's previous opinion fully sets forth the facts of this case.[1] In brief summary, defendant wanted to vaginally penetrate the complainant, his then-girlfriend, while their friend,

---

[1] *People v Sikorski*, unpublished opinion per curiam of the Court of Appeals issued June 4, 2015 (Docket No. 320867).

-1-

JS, penetrated her anally.  When the complainant stated that she did not want to participate in such acts and JS indicated reluctance to participate, defendant sexually assaulted the complainant by vaginally penetrating her with his penis, while at the same time forcing JS to sexually penetrate her orally with his penis.  Defendant accomplished the sexual assault while hitting the complainant in the face more than once and by choking her twice.  Both the complainant and JS testified to being afraid of defendant.

> (1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:
>
> * * *
>
> (c)  Sexual penetration occurs under circumstances involving the commission of any other felony.
>
> (d)  The actor is aided or abetted by 1 or more other persons and either of the following circumstances exists:
>
> * * *
>
> (*ii*)  The actor uses force or coercion to accomplish the sexual penetration.  Force of coercion includes, but is not limited to, any of the circumstances listed in subdivision (f).  [MCL 750.520b (footnote added).]

There is no dispute that the crime of domestic assault, MCL 750.81(4), of which defendant was also convicted, can and did serve as the underlying felony for the penile/vaginal penetration charge premised upon MCL 750.520b(1)(c).  Where it gets murky, and the primary issue for our reconsideration, is whether defendant's act of penile/vaginal penetration with the complainant that served as the basis for his charge and conviction under MCL 750.520b(1)(c) was the exact same act of penetration that served as the basis for his charge and conviction under MCL 750.520b(1)(d)(ii), thus giving rise to a double jeopardy violation.

Issues involving double jeopardy are review by this Court de novo.  *People v Duenaz*, 306 Mich App 85, 105; 854 NW2d 531 (2014).  Preliminarily,

> [t]he Double Jeopardy Clause of the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb . . . ."  The Michigan Constitution similarly provides that "[n]o person shall be subject for the same offense to be twice put in jeopardy."  The prohibition against double jeopardy protects individuals in three ways:  "(1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense."  The first two protections comprise the "successive prosecutions" strand of double jeopardy, while the third protection is known as the "multiple punishments" strand.  [*People v Miller*, 498 Mich 13, 17; 869 NW2d 204 (2015)(citations omitted).]

Specifically, the intent underlying "[t]he multiple punishments strand of double jeopardy is . . . to ensure that courts confine their sentences to the limits established by the Legislature and . . . [to] act[] as a restraint on the prosecutor and the Courts." *Id.* at 17-18 (citations omitted). The issue on remand involves the "multiple punishments" strand of double jeopardy because it is premised on this Court's initial ruling that defendant's two CSC I convictions, under MCL 750.520b(1)(c) and (d)(*ii*), comprised punishments for one act of penetration by defendant.

For purposes of a double jeopardy analysis, this Court correctly observed that "a single act of penetration, even though accompanied by multiple aggravating circumstances, cannot result in multiple CSC convictions and sentences." *People v Garland*, 286 Mich App 1, 6; 777 NW2d 732 (2009), citing *People v Johnson*, 406 Mich 320, 331; 279 NW2d 534 (1979); *People v Malkowski*, 198 Mich App 610; 499 NW2d 450 (1993), overruled in part on other grounds in *People v Edgett*, 220 Mich App 686; 560 NW2d 360 (1996). Similarly, as recognized in *Johnson*, 406 Mich at 330-331, quoting *People v Johnson*, 75 Mich App 221, 226-227; 255 NW2d 207 (1977), when evaluating the language of MCL 750.520b and its underlying legislative intent:

> We do not perceive any legislative intent, however, that proof of one or more of these aggravating circumstances could transform one criminal sexual act into many. Although the statute is not explicitly phrased in the alternative, we are of the opinion that the Legislature intended that the various aggravating circumstances be alternative ways of proving criminal sexual conduct in the first degree. Canons of strict construction and the rule of lenity, in any event, would require that result in the absence of a clear legislative intent to the contrary.

The felony informations in this matter, dated November 29, 2012 and January 17, 2013, identify the charge of CSC I under MCL 750.520b(1)(d)(*ii*) as "Count 2: Criminal Sexual Conduct – First Degree (Accomplices)," and specify:

> [S]exual penetration to-wit: penile/vaginal with [complainant], while aided or abetted by 1 or more other persons, to wit: one male, and said defendant used force or coercion to accomplish the sexual penetration[.]

The felony informations, then, appear to indicate that defendant's single, penile/vaginal penetration of the complainant did serve as the basis for the MCL 750.520b(1)(d)(ii) charge.

Additionally, before jury voir dire, the relevant CSC I charge was simply referenced by the trial court as involving a charge of CSC I "with an accomplice." The trial court read the felony information during preliminary proceedings as follows:

> Count 2: Criminal Sexual Conduct 1st Degree with an Accomplice, the Defendant did engage in sexual penetration to wit penal [sic] vaginal with [the complainant] while aided or abeded [sic] by one other person to wit [JS] said Defendant used force or coercion to accomplish the sexual penetration.

In the initial instructions[2] provided to the jury before the taking of testimony or the submission of evidence, the trial court again referenced the relevant CSC I count as pertaining to contact with the victim's "genital opening." And, the prosecutor referenced the relevant CSC I charge as involving "oral penetration" during jury voir dire, but as contact between defendant's "penis" and the victim's "genital opening" in his opening statement. At least initially, then, it appears that the same act of penetration served as the basis for both CSC I charges. Nevertheless, it is the trial court's later instructions to the jury at the conclusion of trial that are dispositive on this issue, as per the Supreme Court's remand directive. *Sikorski*, 499 Mich at 899 ("[W]e remand this case to the Court of Appeals for reconsideration of whether this conviction was based on the same act of penetration as the defendant's conviction under MCL 750.520b(1)(c), given the manner in which the jury was instructed as to each count after the close of proofs.").

In finalizing the jury instructions, discussion was had concerning modification of the instructions pertaining to the CSC I charge under MCL 750.520b(1)(d)(*ii*). Defense counsel argued that JS was *forced* to engage in penile/oral penetration with the complainant, and that did not fit the parameters of the intent of the statute. Rather, the statute addressed a situation of where one was actually going to be charged with aiding and abetting, or something similar. The prosecution countered that whether forced or not, the statute merely said "aided and abetted by one or more other persons" and that force or coercion was used. The prosecution stated that JS was an accomplice because he took his penis out and put it in the complainant's mouth, and that the commission of the crime by defendant was in forcing JS to do so, but that he did so with an accomplice (JS). According to the prosecutor, had JS refused and walked away, there would be no Count 2 as to an accomplice, because there would not be two penetrations of the complainant. The trial court agreed with the prosecutor, explaining:

> . . . something had to occur for the entry into by [JS's] penis into [the complainant's] mouth. There's no indication that Mr. Sikorski did it himself, that he grabbed [JS's] penis and put it in her mouth. So there has to be some cooperation. Whether that cooperation—seconded before or during the alleged act the Defendant was assisted by another person who did something to assist the commission of the crime. It appears that if the jury believes those two witnesses that the wording of the statute is met. . . . It doesn't say force or coercion against the Defendant, it says force or coercion. He forced or coerced [JS] and [the complainant] and therefore, if they believe that then those acts are prescribed [sic] and [] prohibited by the statute in question[.][3]

---

[2] Neither party objected to the trial court's initial instructions at the start of trial.

[3] When jury deliberations began, the jury sent out a note seeking "clarification on the language concerning who was coerced or forced" for purposes of Count 2. With the approval of counsel, the trial court responded to the jury's inquiry as follows:

> If you find beyond a reasonable doubt that sexual act involving entry into [the complainant's] oral opening by the accomplices [sic] penis and entry no matter how

The trial court thereafter instructed the jury as to the charges, emphasizing that they comprised three separate crimes. For the first CSC I charge (Count 1) under MCL 750.520b(1)(c), the trial court identified the first element to be proved as defendant's having "engaged in a sexual act that involved entry into [the complainant's] genital opening by the defendant's penis" in circumstances that comprised the "commission of Domestic Violence." The elements to be proven pertaining to the second CSC I charge, pursuant to MCL 750.520b(1)(d)(*ii*), were described as involving "that the defendant engaged in sexual act that involved entry into [the complainant's] oral opening by the accomplice's penis," that "the defendant was assisted by another person" in the commission of the crime and "used force or coercion to commit the sexual act." Thus, in the final jury instructions, the trial court made clear that the two CSC I charges involved two concurrent, but separate, acts of sexual penetration – oral and vaginal.

As recognized in *People v Dowdy*, 148 Mich App 517, 521; 384 NW2d 820 (1986*)*:

> In light of the language and focus of the statute, we believe the Legislature intended to punish separately each criminal sexual penetration. Accord, *People v Nelson*, 79 Mich App 303; 261 NW2d 299 (1977), rev'd in part 406 Mich 1020 (1979) (defendant's convictions on two counts of first-degree criminal sexual conduct based upon two penetrations, vaginal and oral, occurring as part of a continuous sexual assault, do not violate the constitutional prohibition against being twice put in jeopardy for the same offense). The offense of first-degree criminal sexual conduct has been completed after sexual penetration has occurred by any one of the enumerated circumstances. From the language of the statute, it appears that the Legislature intended to authorize separate punishment for each completed sexual penetration.

The Court recognized the distinction between whether "a single penetration accompanied by more than one of the aggravating factors enumerated in MCL 750.520b could support conviction for more than one count of first-degree criminal sexual conduct" from the situation where "[it] is not the number of aggravating circumstances which gives rise to the double jeopardy claim . . ., but . . . the number of acts of sexual penetration that have occurred." *Id.* at 522, citing *Johnson*, 406 Mich at 330-331. Similarly, in *People v Rogers*, 142 Mich App 88, 92; 368 NW2d 900 (1985), this Court distinguished between cases involving a defendant "convicted of multiple

---

> slight is enough it does not matter whether the sexual act was completed or semen was ejaculated. Second, that before or during the alleged sexual act Defendant was assisted by another person who did something to assist in the commission of the crime. Third, that the Defendant used force or coercion to commit the sexual act. The statute isn't clear. It doesn't say who used force or coercion against so my interpretation is and what I'm telling you the law is there has to be force or coercion by the Defendant against either the third party, or [the complainant] or both. If you find he used force or coercion against [the complainant] beyond a reasonable doubt and that [JS] was a voluntary participant that's enough. If you find that you think that [the complainant] was a voluntary participant but he used force or coercion to force [JS] to participate that's enough or you can find that he used force or coercion against both.

counts of first-degree criminal sexual conduct based upon his single act of penetration" from those involving "multiple penetrations and multiple actors."

Based on the testimony adduced at trial, defendant, while physically assaulting the complainant, engaged in a single act of penetration involving the placement of his penis in her vagina. Defendant was also present when, through the use of force and threats, JS engaged in an additional and concurrent act of penetration by inserting his penis into the complainant's mouth. Convictions arising from these independent acts are not for the " 'same offense' but are for the separate acts of penetration in which he was involved." *Id.* Defendant's use of force or coercion in aiding and facilitating the penetration of the complainant by JS was sufficient to convict him as an aider and abettor, in addition to the conviction for defendant's personal act of vaginal penetration. See *Rogers*, 142 Mich App at 92; *People v Pollard*, 140 Mich App 216, 220; 363 NW2d 453 (1985). MCL 767.39 provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense." Based on this language, "one convicted as an aider and abettor is punished the same as the principal of the offense." *People v Coomer*, 245 Mich App 206, 223; 627 NW2d 612 (2001).

While the basis for the CSC I penetration under MCL 750.520b(1)(d)(*ii*) was initially murky, at best, the instructions and clarification provided by the trial court to the jury in its final instructions regarding that charge was for a separate act of sexual penetration committed by JS, following the threats and coercion by defendant. The conviction is thus not violative of double jeopardy.

Because this Court finds that there was no double jeopardy violation, our Supreme Court's remand order necessitates that it also consider defendant's claim that the evidence was insufficient to sustain his CSC I conviction under MCL 750.520b(1)(d)(*ii*). *Sikorski*, 499 Mich at 899. "We review de novo a challenge on appeal to the sufficiency of the evidence." *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). "[T]his Court must review the evidence in the light most favorable to the prosecutor and determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond a reasonable doubt." *People v Harmon*, 248 Mich App 522, 524; 640 NW2d 314 (2001).

To establish the requisite elements of CSC I under MCL 750.520b(1)(d)(*ii*), the prosecutor is required to demonstrate that: (a) defendant engaged in "sexual penetration with another person," (b) "[t]he actor is aided or abetted by 1 or more persons," and (c) "[t]he actor use[d] force or coercion to accomplish the sexual penetration." "The phrase 'aids or abets' is used to describe any type of assistance given to the perpetrator of a crime by words or deeds that are intended to encourage, support, or incite the commission of that crime." *People v Moore*, 470 Mich 56, 63; 679 NW2d 41 (2004)(citation omitted). "Specific intent is not required of an aider and abettor if it can be shown that defendant 'rendered his aid and assistance to the principal actor with the knowledge that the principal himself possessed the intent necessary to be guilty of the crime.' " *People v Olszewski*, 119 Mich App 455, 459; 326 NW2d 394 (1982). Subsection (f) of MCL 750.520b(1) defines force or coercion, in relevant part, as follows:

(*i*) When the actor overcomes the victim through the actual application of physical force or physical violence.

(*ii*) When the actor coerces the victim to submit by threatening to use force or violence on the victim, and the victim believes that the actor has the present ability to execute these threats.

(*iii*) When the actor coerces the victim to submit by threatening to retaliate in the future against the victim, or any other person, and the victim believes that the actor has the ability to execute this threat[.]

The elements of sexual penetration through the use of force or coercion were established through the testimony of the complainant and JS. Both asserted that defendant vaginally penetrated the complainant and that JS simultaneously penetrated her orally. The complainant and JS testified that they did not wish to participate in the sexual acts, but were forced or threatened by defendant to engage. Both witnesses testified that defendant repeatedly struck and choked the complainant in the effectuation of the sexual acts.

Defendant asserts that because JS contends he was forced to engage in the sexual act with the complainant that the prosecutor cannot establish his participation as an aider and abettor to meet the remaining requirement for MCL 750.520b(1)(d)(*ii*). The argument lacks merit because, even believing JS's assertion that he was not a willing participant in the events, the evidence showed that JS did orally penetrate the complainant with the knowledge of defendant's intent to sexually violate the complainant against her will. As such, JS meets the legal requirements of an aider and abettor. *Olszewski*, 119 Mich App at 459. Because JS performed an act that served to assist defendant in the effectuation of a sexual assault, sufficient evidence was adduced at trial to support defendant's conviction of CSC I under MCL 750.520b(1)(d)(*ii*).

With regard to the sentences imposed, our Supreme Court also vacated "that part of the Court of Appeals judgment denying the defendant sentencing relief on the basis of *People v Herron*, 303 Mich App 392 (2013)," and remanded for reconsideration in light of *Lockridge*, 498 Mich 358. *Sikorski*, 499 Mich at 899. On appeal, defendant alleged that he was entitled to resentencing premised on the trial court's engagement in impermissible judicial fact-finding in the scoring of OVs 4, 7, 10, 11, 13 and 14, in violation of *Alleyne v United States*, 570 US __, 133 S Ct 2151, 186 L Ed 2d 314 (2013). This Court previously rejected this argument, relying on *People v Herron*, 303 Mich App 392, 399-405; 845 NW2d 533 (2013), in which this Court held that *Alleyne* does not apply to Michigan's sentencing scheme. Shortly after this Court issued its decision, our Supreme Court in *Lockridge* held that Michigan's sentencing guidelines are constitutionally deficient to the extent that "the guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum' sentence under *Alleyne*." *Lockridge*, 498 Mich at 364 (emphasis in original).

In this case, defendant preserved his claim of an *Alleyne* error by raising the issue in a post-sentencing motion for correction of his sentence. In *People v Stokes*, 312 Mich App 181, 198-199; 877 NW2d 752 (2015), lv held in abeyance ___ Mich ___ (2016) (Docket No. 152500), this Court applied *Lockridge* to a preserved *Alleyne* error and similarly held that if judicially

found facts result in an increase to a defendant's sentencing guidelines range, the proper remedy to be employed is a remand to the trial court for proceedings consistent with *Crosby*.[4] In addition, this Court in *People v Terrell*, 312 Mich App 450, 466; ___ NW2d ___ (2015), lv held in abeyance ___ Mich ___ (2016) (Docket No. 321573) (emphasis in original), held that, with respect to a preserved *Alleyne* error, even if "judicial fact-finding did *not* increase [a] defendant's minimum sentence guidelines range," a "trial court's compulsory use of the guidelines was erroneous in light of *Lockridge*." Consequently, "a remand to engage in the *Crosby* procedure is necessary to determine . . . error resulting from the compulsory use of the guidelines . . . ." *Id.*

The trial court assessed 10 points for OV 4. The assignment of 10 points on OV 4 is appropriate when "[s]erious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). "[T]he fact that treatment has not been sought is not conclusive." MCL 777.34(2). A complainant's "expression of fearfulness is enough to satisfy the statute['s]" requirement that the victim suffer serious psychological injury. *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012). Here, the complainant testified at trial that she was "scared to death" of defendant and in her victim impact statement she indicated that she is "afraid all the time wondering what would happen to [her] if he gets out" and that "he will try to hurt [her] or kill [her]." Thus, there was record evidence supported the assessment of 10 points for OV 4. However, because psychological injury requiring treatment to a victim does not comprise an element of any of the crimes defendant was convicted of, and was not found by a jury or admitted by defendant, the trial court's assessment of points on this variable was dependent upon judicial fact-finding.

The trial court assessed 50 points on OV 7. Under MCL 777.37(1)(a), 50 points are to be scored when "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense[.]" We also conclude that defendant was properly assessed 50 points for OV 7 (aggravated physical abuse) because his conduct was designed to substantially increase the fear and anxiety the complainant suffered during the offense. MCL 777.37(1)(a). Evidence at trial established that defendant choked the complainant and threatened to kill her while sexually assaulting her and subjected her to the fear and humiliation of a multiple offender situation. By doing so, defendant engaged in conduct beyond the minimum necessary to commit CSC I and it is more probable than not that his conduct was intended to make the victim's fear or anxiety increase by a considerable amount. *Hardy*, 494 Mich at 443. Though "sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered" are not technically elements of the charged offense of MCL 750.520b(1)(d)(*ii*), defendant's commission of an assault and battery comprised "conduct beyond the minimum required to commit the offense" of CSC I under MCL 750.520b(1)(d)(*ii*), which requires only the use of force or coercion. Hence, the jury's conviction of defendant for domestic violence indicates that defendant's conduct went beyond the necessary element of force or coercion under

---

[4] *United States v Crosby*, 397 F2d 103 (CA 2, 2005), abrogated on other grounds *United States v Lake*, 419 F3d 111, 113 (CA 2, 2005).

MCL 750.520b(1)(d)(*ii*), escalating into an actual assault and battery, thereby meeting the requirement for excessive brutality, and supporting the assessment of 50 points on this variable.

The trial court assessed defendant 5 points for OV 10. Five points are scored for OV 10 when "[t]he offender exploited a victim by his or her difference in size or strength, or both, or exploited a victim who was intoxicated, under the influence of drugs, asleep, or unconscious." MCL 777.40(c). For purposes of OV 10, "vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation." MCL 777.40(3)(c). Defendant admits that he was bigger and/or stronger than the complainant. Moreover, the complainant testified that she was dizzy from the alcohol she drank that night, and defendant and the complainant were involved in a boyfriend-girlfriend relationship at the time of the offenses and were living together. See *People v Dillard*, 303 Mich App 372, 380-381; 845 NW2d 518 (2013) (holding that the trial court did not clearly err by assessing 10 points for OV 10 where "[t]he victim was clearly vulnerable in light of defendant's greater strength, her intoxication, and the domestic relationship between the two, including the fact that she and defendant had a child together"). The record evidence thus supported a scoring of 5 points for OV 10. However, the exploitation of a victim premised on size, strength or any of the other enumerated variables for OV 7 do not comprise elements of any of the crimes defendant was convicted of, as found by a jury or admitted by defendant. As such, the trial court's assessment of points on this variable was dependent upon judicial fact-finding.

In accordance with OV 11, 25 points are assessed for this variable when "[o]ne criminal sexual penetration occurred." MCL 777.41(1)(b). In scoring this variable, "all sexual penetrations of the victim by the offender arising out of the sentencing offense" must be scored. MCL 777.41(2)(a). For purposes of CSC I, no points are to be scored for the one penetration that forms the basis of the CSC offense. MCL 777.41(2)(c). "The phrase 'arising out of the sentencing offense' refers to all penetrations arising out of the entire assault." *People v Wilkins*, 267 Mich App 728, 743; 705 NW2d 728 (2005). This Court previously determined that the trial court's assessment of 25 points for this variable was not proper, but that conclusion was premised on this Court's determination "that defendant sexually penetrated the complainant one time" and that the "one penetration that forms the basis of the CSC I offense" must be excluded. *Sikorski*, unpub op at 9. Given our current conclusion that there was no double jeopardy violation and because the evidence established two separate acts of penetration, we now find that the trial court's scoring of 25 points on this variable was proper. And, the assessment of 25 points was not dependent upon judicial fact-finding because the jury's verdict reflects defendant's guilt beyond a reasonable doubt of two separate counts of CSC I under MCL 750.520b(1)(c) and (d)(*ii*).

The trial court assessed 25 points for OV 13. Under MCL 777.43(1)(c), 25 points are assessed for this variable when "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). For purposes of scoring this variable, "all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). In assessing 25 points for OV 13, the trial court counted: (1) the current (2014) CSC I conviction based on MCL 750.520b(1)(c) (sexual penetration during the commission of another felony), (2) the current (2014) domestic violence, third offense conviction, MCL 750.81(4), and (3) a 2009 domestic violence conviction. The scoring of this variable did not violate *Alleyne/Lockridge* because prior

-9-

convictions are an exception to the general rule that any fact that increases the penalty for a crime must be admitted by a defendant or found by a jury beyond a reasonable doubt. See *Lockridge*, 498 Mich at 370, citing *Apprendi v New Jersey*, 530 US 466, 490; 120 S Ct 2348; 147 L Ed 2d 435 (2000).

Finally, the trial court assessed 10 points for OV 14. MCL 777.44(1)(a) permits the scoring of 10 points on this variable when "[t]he offender was a leader in a multiple offender situation." Record evidence supports the scoring of 10 points, given that defendant acted first by vaginally penetrating the complainant, beating and choking her, and then directed, ordered, and threatened JS to have the complainant perform oral sex on him while defendant continued to vaginally penetrate the complainant. Cf. *People v Rhodes*, 305 Mich App 85, 90; 849 NW2d 417 (2014) (holding that the trial court erred by assessing 25 points for OV 14 where "the evidence d[id] not show that defendant acted first, gave any directions or orders to [the other offender], displayed any greater amount of initiative beyond employing a more dangerous instrumentality of harm, played a precipitating role in [the other offender]'s participation in the criminal transaction, or was otherwise a primary causal or coordinating agent"). And, the jury's conviction of defendant in accordance with MCL 750.520b(1)(d)(*ii*) supports scoring of this variable premised on the existence of "a multiple offender situation." Because a leadership role is not, however, an element of the crimes for which defendant was convicted, the scoring of this variable was dependent upon judicial fact-finding.

As scored by the trial court, defendant had a total prior record variable (PRV) score of 70, placing him in PRV Level E. Defendant's total OV score was 130, placing him in OV Level VI (100+ points). The resultant guidelines range was calculated to be 225 to 750 months on the applicable sentencing grid, as enhanced for a fourth-offense habitual offender (Sentencing Information Report, lower court file). MCL 777.62; MCL 721(3)(c). On appeal, this Court previously determined that the subtraction of the 25 points assessed for OV 11 did "not alter the offense level VI category in which defendant's score falls." *Sikorski*, unpub op p 10. As such, this Court determined that defendant was not entitled to resentencing. *Id.* On remand, the restoration of the 25 points assessed for OV 11, while commensurately disregarding the 25 points attributable to the scoring of OVs 4, 10, and 14 because of judicial fact-finding, results in a total OV score of 105 points, which does not affect defendant's placement in the cell of the sentencing grid under which he was sentenced. Nevertheless, remand for a *Crosby* proceeding is still warranted under this Court's decision in *Terrell*, because defendant preserved this issue and the trial court's compulsory use of the guidelines was itself erroneous under *Lockridge*. *Terrell*, 312 Mich App at 466.

We affirm defendant's convictions, but remand for a Crosby proceeding. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto

-10-