STATE OF WEST VIRGINIA

*v.*

RICKY REED

(No. 14271)

Decided March 17, 1981.

*Frankovitch & Anetakis and Carl N. Frankovitch* for plaintiff in error.

*Chauncey H. Browning*, Attorney General, *S. Clark Woodroe*, Assistant Attorney General, for defendant in error.

NEELY, JUSTICE:

In 1977 the defendant was indicted in Brooke County on one count of sexual assault in the second degree and two counts of sexual abuse in the first degree. After trial in the circuit court, the jury found the defendant not guilty of sexual assault in the second degree under the first count, but guilty of the lesser offense of sexual misconduct; guilty of sexual abuse in the first degree under the second count; and, not guilty of sexual abuse in the first degree under the third count. The defendant was sentenced to an indeterminate term of one to five years in the penitentiary for sexual abuse in the first degree and sentenced to one year in the Brooke County jail for sexual misconduct, the two sentences to run concurrently.

There is one event which is the gravamen of both convictions. On 26 November 1976 the victim, D. T., along with two friends, met at the victim's house at approximately 9:00 p.m. and then went to several clubs in the vicinity of Weirton. The victim first met the defendant at approximately 10:00 p.m. at the Starlite Club in Weirton. The defendant and the original trio then voluntarily spent the night until early in the morning in each other's company and after everyone had consumed substantial alcohol all voluntarily retired to the defendant's apartment sometime after 3:00 a.m. on the morning of 27 November.

Approximately half an hour after arrival at the defendant's apartment the victim asked the defendant to show her where the bathroom was. The bathroom was located off the bedroom and the defendant led the way to the bathroom. The victim's testimony was to the effect that when she came out of the bathroom the defendant was in the bedroom and grabbed her arm and initially asked her to stay in the bedroom to talk for awhile. When she declined the defendant threw her on the bed, forcibly removed her clothes, and had sexual intercourse with her.

The victim testified that she lost consciousness or "fainted" while she was in the bedroom and that when she awoke she had blood on her. Upon gaining consciousness she called for her companion, Debbie Sweat, who came into the bedroom, helped her dress, and then took her to the Weirton General Hospital. She was admitted to the hospital and was confined for approximately two weeks for a traumatic hematoma. The medical testimony confirms that the victim suffered a large hematoma to the outer vulva which was traumatic in origin.

## I.

The defendant assigns numerous errors which we shall address *seriatim*. First, the defendant asserts that the statutory offense of sexual abuse is void for vagueness. *W. Va. Code*, 61-8B-1 [1976] defines the term "sexual contact" as follows:

> . . . any touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

The defendant asserts that the language "done for the purpose of gratifying the sexual desire of either party" is unconstitutionally vague because there is no definition of "sexual gratification" or "sexual desire". The Court finds this assignment of error entirely without merit since the terms "sexual gratification" and "sexual desire" are both plain and unambiguous on their face. We believe the words give any person of ordinary intelligence fair notice that his contemplated conduct is forbidden by statute. *United States v. Harriss*, 347 U.S. 612 (1954); *State v. Flinn*, 158 W.Va. 111, 208 S.E.2d 538 (1974).[1]

---

[1] The United States Supreme Court has sustained at least two state statutes covering criminal sexual conduct against charges that they were unconstitutionally vague. In *Rose v. Locke*, 423 U.S. 48 (1975), a Tennessee statute proscribing "crimes against nature" was held not unconstitutionally vague as applied to cunnilingus and in *Wainwright v. Stone*, 414 U.S. 21 (1973) the Court upheld a Florida statute

## II.

The defendant's second assignment of error is that the offenses of sexual assault in the second degree and sexual misconduct are indistinguishable since both require the same elements of proof. We must concede that the distinguishing element, namely the level of resistance, is tenuous at best; however, since there is a difference which a jury can understand under proper instruction we do not find the statute constitutionally infirm on that ground. *W. Va. Code*, 61-8B-9 [1976], defines "sexual misconduct," a misdemeanor, as follows:

> A person is guilty of sexual misconduct when he engages in sexual intercourse with another person without the latter's consent . . .

The statute *Code*, 61-8B-4 [1976], defines the crime of sexual assault in second degree, a felony, in part as follows:

> (a) A person is guilty of sexual assault in the second degree when: (1) He engages in sexual intercourse with another person by forcible compulsion.

The defendant asserts that the definition of "lack of consent" as applied to sexual misconduct is provided by *Code*, 61-8b-2 [1976] which says:

> (b) Lack of consent results from:
>
> (1) Forcible compulsion; or
>
> (2) Incapacity to consent; or
>
> (3) If the offense charged is sexual abuse, any circumstances in addition to the forcible compulsion or incapacity to consent in which the victim

---

proscribing "the abominable and detestable crime against nature" as applied to copulation per os and per anum, despite the fact that the Florida State Supreme Court had recently changed its mind about the statute's permissible scope. Numerous state courts have recently sustained vagueness challenges against their state criminal sexual conduct statutes. *See, e.g. State v. Larson,* 94 N.M. 795, 617 P.2d 1310 (1980); *Weddle v. Wyoming,* 621 P.2d 231 (Wyo. 1980); *State v. Kennedy,* 616 P.2d 594 (Utah 1980); *Gates v. State,* 91 Wis.2d 512, 283 N.W.2d 474 (1979); *People v. Clark,* 85 Mich. App. 96, 270 N.W.2d 717 (1978).

does not expressly or impliedly acquiesce in the actor's conduct.

(c) A person is deemed incapable of consent when he is:

(1) Less than sixteen years old; or

(2) Mentally defective; or

(3) Mentally incapacitated; or

(4) Physically helpless.

and that in the case before us there could have been no lack of consent without the use of force since the victim was over age, mentally competent, and fully conscious, at least at the outset. While the Court finds that the sexual offenses statute, *Code*, 61-8B-1 *et. seq.* [1976] is not exactly a triumph of draftsmanship, nonetheless, there is sufficient distinction between sexual assault in the second degree and sexual misconduct that they do, indeed, constitute separate offenses, although sexual misconduct can be a lesser included offense of sexual assault in the second degree.

Sexual misconduct excludes the possibility of forcible compulsion, but it does require a lack of consent. In this regard it is important to read *W. Va. Code*, 61-8B-1 [1976] which defines "forcible compulsion" as:

(a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or

(b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person or in fear that he or another person will be kidnapped.

For the purposes of this definition "resistance" includes physical resistance or any clear communication of the victim's lack of consent.

The defendant asserts that the guilty verdict of sexual misconduct was inconsistent with the not guilty verdict of sexual assault in the second degree since the acquittal on the second degree sexual assault count constituted a

finding that there was no forcible compulsion. However, the jury's finding can be interpreted as a determination that on the night of the incident the victim did not consent to have intercourse—hence the verdict of "guilty of sexual misconduct," but did not resist strenuously enough to have been a victim of forcible compulsion—hence not guilty of sexual assault in second degree and assault and battery.

It was apparently the intention of the Legislature to provide a statutory scheme by which a jury will have an opportunity to assess differing levels of culpability in the highly subjective area of sexual offenses, and punish each accordingly. Thus it created two separate crimes, the first, sexual assault in the second degree where the victim uses all reasonable means available to her to discourage her assailant, and second, sexual misconduct, where the victim does not, in fact, consent, but fails to avail herself of all the resources available to her to overcome the attack. While it may appear to the Court that this is a distinction without a difference, nonetheless, we are compelled to exhaust every reasonable interpretation of the statute before concluding that the statute is unconstitutional. *State ex rel. Kanawha County v. Paterno,* 160 W.Va. 195, 233 S.E.2d 332 (1977); *Herold v. McQueen,* 71 W.Va. 43, 75 S.E. 313 (1912).

In fact, all the Legislature has done, albeit inartfully, is to recognize the historic reluctance on the part of juries to acquiesce in convictions involving very long prison terms for sexual offenses committed in the course of voluntary companionship. The lesser included offense of sexual misconduct almost constitutes a finding of sexual assault with something akin to a recommendation of mercy. While it can be argued that this scheme accords a jury an impermissible degree of latitude in applying subjective standards, it hardly differs in effect from the historically legitimized definitions of varying degrees of homicide. Certainly the concept of "malice" as it relates to the difference between second degree murder and voluntary manslaughter is nothing more than a linguistic shorthand to invite a jury to assess differing levels of culpability and punish accordingly. Some latitude in the assessment of

punishment is inherently part of the jury system and it will inevitably be accomplished by some explicit or implicit device.

## III.

The defendant next asserts that the court erred in permitting the State to inquire into the physical appearance of the defendant at or near the time of the alleged offense. Apparently the defendant had long hair and a generally unkempt appearance at the time of the alleged offense while he appeared in court in an entirely different guise. Since there was no issue of identification raised during the trial and since the introduction of the photograph of the defendant was exclusively for the purpose of adding credence to the testimony regarding the generally bizarre nature of the defendant's apartment and his conduct, we find the introduction of the photograph irrelevant and prejudicial since it was calculated to exacerbate the prejudices of the jury.

We have always held that the admission of photographs rests in the sound discretion of the trial court and that its rulings will be upheld unless there is a clear showing of abuse of discretion. *State v. Woolridge,* 129 W.Va. 448, 40 S.E.2d 899 (1946). However, to be admissible photographs must be offered for some relevant purpose and must have probative value which outweighs any prejudicial effect. Mindful of our rule that the introduction of photographs is controlled very largely by the discretion of the trial judge, particularly when objection to the admission rests solely upon undue prejudice, *State v. Sette,* 161 W.Va. 384, 242 S.E.2d 464 (1978); *State v. Whitt,* 129 W.Va. 187, 40 S.E.2d 319 (1946), we would not find this error alone to be reversible.[2]

---

[2] Our research revealed no other state court that found a photograph depicting the accused with long hair, in contrast to clean-cut appearance in court, to be reversible error. *See, e.g. State v. Ostrand,* 219 N.W.2d 509 (Iowa 1974) (photograph showing defendant with long hair at time of sale of marijuana was held not reversible error); *State v. Lippi,* 108 Ariz. 342, 498 P.2d 209 (1972) (admission of photograph of defendant with long hair had little probative value but held not reversible error); and *Dozir v. State,* 257 So.2d 857 (Miss. 1972)

Were we considering admission of a "mug shot" for example, which had little relevance and little probative value, our decision would be different.

## IV.

Next the defendant contends that he was entitled to an instruction that the victim's prior sexual activities could not be admitted into evidence and that the jury should draw no conclusions from the defendant's failure to elicit testimony on this subject. However, the defendant was accorded an *in camera* hearing as suggested by *State v. Green*, 163 W.Va. 681, 260 S.E.2d 257 (1979) and the trial court determined that the victim's past sexual history would bear no relevance to the question of guilt in the prosecution of this case. Since the guidelines of *State v. Green, supra* were met, the subject of the victim's past sexual history had no bearing on the outcome of the case and the defendant was not entitled to any instruction on the subject.

## V.

The defendant asserts that his conviction for two separate crimes, namely sexual abuse in the first degree and sexual misconduct, as the result of one single criminal transaction is unconstitutional under the double jeopardy clauses of both Federal and State constitutions. We agree with the defendant since there is no evidence of two distinct acts of intercourse separated by even a few minutes; it is clear from the evidence that the defendant's sexual contact under the sexual abuse in the first degree count of the indictment was entirely ancillary to the consummation of the alleged sexual intercourse for which he was convicted of sexual misconduct.[3] Double jeopardy clearly bars

---

(admission of photograph showing accused with long hair not improper).

[3] Our research revealed that over the past decade states that have considered similar charges of double jeopardy under the applicable sexual offense statute have generally concluded that the defendant cannot be convicted of lesser offenses along with the greater offense. *See People v. Johnson*, 406 Mich. 320, 279 N.W.2d 534 (1979) (single sexual penetration cannot result in multiple convictions); *David v.*

conviction for a lesser offense when the accused has been convicted of the greater offense. *Jeffers v. United States*, 432 U.S. 137 (1977).

With the enactment of the Sexual Offenses Act, the Legislature replaced a variety of obsolete statutory provisions[4] relating to sex crimes with a unified statute which faithfully reflected more contemporary understanding of criminal sexual conduct. The new statute represents an effort to refine differing levels of culpability in criminal sexual conduct. Recognizing that some forms of criminal sexual conduct are more heinous than others, the Legislature established two categories, namely sexual assault which includes three degrees of illegal sexual intercourse and sexual abuse which includes three degrees of sexual contact. Each degree is differentiated by the nature of the conduct and the nature of the victim. A final category, sexual misconduct, covers sexual assaults without the victim's consent, but under circumstances where the victim has not earnestly resisted.

A careful reading of the sexual offenses statute indicates that some offenses, like sexual abuse in the second degree, an offense applicable only to sexual contact with a person who is mentally defective -or mentally incapacitated, are

---

*Commonwealth*, 561 S.W.2d 91 (Ky. 1978) (acquittal on charge of detaining woman against her will precludes subsequent conviction for rape); *State v. Anonymous*, 31 Conn. Sup. 292, 396 A.2d 136 (1974) (conviction for sexual contact in third degree barred subsequent prosecution for rape and risk of injury to minor child); *State v. Lamb*, 251 Ark. 999, 476 S.W.2d 7 (1972) (acquittal on one degree of rape barred subsequent prosecution for rape of another degree); *People v. Moran*, 33 Cal. App. 3d 724, 109 Cal. Rptr. 287 (1973) (defendant could not be convicted both of rape and of lesser included offense of assault with intent to commit rape) *But see State v. Gilchrest*, 25 Wash. App. 427, 607 P.2d 1243 (1980) (indecent liberties held not to be a lesser included offense of rape); and *People v. Nelson*, 79 Mich. App. 303, 261 N.W.2d 299 (1977) (defendant convicted on four counts of criminal sexual conduct for single act, but this holding virtually overruled in *People v. Johnson*, *supra*).

[4] W. Va. Code, 61-8B-1 [1976] replaced the following sections of the *W. Va. Code*: 61-2-15 [1965] and 61-2-15a [1969] (rape; age of consent; carnal knowledge of male person); 61-8-13 [1923] (crimes against nature); and, 61-8-28 (indecent exposure).

quite specific and, therefore, are not lesser included offenses to any of the other enumerated offenses. Some sections of the article, however, are obviously lesser offenses included within greater crimes created by other sections of the article. The defendant was indicted for sexual assault in the second degree, the second highest crime for which the article provides, and under the evidence admitted in the trial before us he could have been convicted of several lesser included offenses. There is no issue in the case before us of the victim being under age, mentally defective, or incapacitated; therefore, offenses which would require those elements are obviously not among the lesser included offenses in this case.

To find otherwise, we must conclude that when the Legislature sought to strengthen the laws against sexual violence, they intended that a single act of sexual intercourse might result in multiple convictions. Since many statutory crimes are duplicative, it is well established that separate statutory crimes may be the "same offense" under the double jeopardy clause, even though they are not identical in either constituent elements or actual proof. *Brown v. Ohio*, 432 U.S. 161 (1977). Each case ultimately turns upon whether the Legislature intended an act to be punished by only one or by more than one statutory provision. *Gore v. United States*, 357 U.S. 386 (1958). Unfortunately, it is rarely possible to divine legislative intent from explicit provisions on the subject of multiple crimes since the Legislature rarely addresses the issue directly. *Gore v. United States*, *supra* at 394 (Warren, C.J. dissenting). As a consequence, courts are required to construct elaborate tests to determine whether separate statutory crimes are the "same offense." *Blockburger v. United States*, 284 U.S. 299 (1932).[5] Where, however, we do not perceive any legislative intent that proof of one or more circumstances of sexual assault should transform one

---

[5] Under *Blockburger*, *supra* "the applicable rule is that where the same act or transaction constitutes a violation of two distinct provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304.

crime into many, it is unnecessary to apply the double jeopardy tests. Although the statute is not phrased in the alternative, we are of the opinion that the Legislature intended merely that there be various gradations in criminal sexual conduct. Certainly the rule of lenity, *Bell v. United States*, 349 U.S. 81, 83 N.13 (1955), requires this result in the absence of a clear legislative intent to the contrary.

Under the indictment for sexual assault in the second degree the defendant could have been convicted of: (1) sexual assault in the second degree if the jury believed that he engaged in sexual intercourse by forcible compulsion; (2) sexual abuse in the first degree if the jury believed that he engaged in sexual contact by forcible compulsion, but never consummated the sexual intercourse; and, finally, sexual misconduct if the jury believed that he did engage in sexual intercourse without the consent of the victim but without using such forcible compulsion as would have overcome "earnest resistance as might reasonably be expected under the circumstances."

Since the evidence before the trial court indicated but one continuing sexual offense transpiring over the course of approximately fifteen minutes and culminating in sexual intercourse, we find that it was reversible error for the court to have provided a verdict form which permitted the following guilty verdicts: guilty of sexual assault in the second degree or guilty of sexual misconduct or guilty of assault and battery under count one; guilty of sexual abuse under count two; and, guilty of sexual abuse under count three. The jury should have been instructed that they could find the defendant guilty of any one of the following in descending order of severity as follows: guilty of sexual assault in the second degree; guilty of sexual abuse in the first degree; guilty of sexual misconduct; or, guilty of assault and battery. It is important to explain that this holding is limited to the facts of this case. Here the sexual contact demonstrated at trial was ancillary to one act of sexual intercourse. We are not confronted with two acts of sexual intercourse, nor are we confronted with an act of sexual intercourse and then an act of sexual contact

separated by some period of time.[6] It would appear to the court that unlawful sexual intercourse could not possibly occur without a certain amount of unlawful sexual contact and it seems unreasonable to us that the Legislature contemplated the division of one act of rape into its component elements for the purposes of punishment.

Accordingly, for the reasons set forth above the judgment of the Circuit Court of Brooke County is reversed and the case is remanded for a new trial.

*Reversed and remanded.*

---

[6] *See, e.g. Hamill v. State*, 602 P.2d 1212 (1979) (defendant convicted for multiple counts of sexual assault when a number of acts were committed); *Commonwealth v. Romanoff*, 258 Pa. Super. Ct., 392 A.2d 881 (1978) (not double jeopardy when one act resulted in conviction for involuntary deviate sexual intercourse and another act resulted in conviction for rape.)