565 S.E.2d 430

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**David Lee BELL, Jr., Defendant Below, Appellant.**

No. 30022.

Supreme Court of Appeals of West Virginia.

Submitted April 2, 2002.

Decided May 24, 2002.

Stephen M. Kenney, Special Assistant Prosecuting Attorney, Charleston, for the Appellee.

David A. Camilletti, Shepherdstown, for the Appellant.

ALBRIGHT, Justice.

This is an appeal by Mr. David L. Bell, Jr., (hereinafter "Appellant") from a final order of the Circuit Court of Jefferson County, pursuant to a jury verdict, finding the Appellant guilty of the felony of wanton endangerment. The Appellant contends that the lower court erred in failing to instruct the jury on brandishing as a lesser included offense and in failing to instruct the jury regarding the right of a landowner to prohibit firearms on his property. Having thoroughly reviewed the record and the arguments of counsel, we reverse the Appellant's conviction and remand for a new trial on a single count of wanton endangerment.

I. Facts and Procedural History

On November 25, 1998, Mr. Clyde Eggleton and his two sons, ages twenty-two and eleven,[1] were hunting on or near the "Bell

---

1. Mr. Eggleton and his sons are African Americans. They assert that Mr. Bell made racist

Farm," land owned by Mr. Lyle Cam Tabb, Jr., and managed by the Appellant. The Appellant observed the hunters and followed them to their vehicle, which was parked on an access road near the premises managed by the Appellant. The Appellant approached the hunters as they were placing their weapons in their vehicle and asked them whether they had permission to hunt on the "Bell Farm." Mr. Eggleton informed the Appellant that he had not been on the "Bell Farm" and had actually been hunting on the adjacent "Ware Farm." The Appellant thereafter informed the hunters that they had been on the "Bell Farm" and informed them that he would shoot them if they came back to the property under his management. According to the testimony of Mr. Eggleton, the Appellant pointed a gun at him and his sons. Mr. Eggleton further testified that when he reached into his pocket to retrieve his keys, the Appellant encouraged him to pull something out because he had six bullets, enough for all three of them. Mr. Eggleton testified that when he asked the Appellant if he planned to shoot the sons, the Appellant stated that he would shoot them also.

Mr. Eggleton telephoned the Appellant at the Appellant's home on the following day, and the Appellant reiterated that the hunters would be shot if they returned to the "Bell Farm." On January 10, 1999, Mr. Eggleton and the West Virginia State Police recorded a phone conversation in which the Appellant again stated that he would shoot the hunters if they returned to the property. The Appellant was arrested on April 10, 1999.

The Appellant was thereafter indicted for three counts of wanton endangerment, three counts of civil rights violations, and three counts of impeding the right to hunt. On March 20, 2000, the State filed a motion to dismiss the indictment, based upon information that the Eggletons had not obtained permission to hunt on the day in question. The State sought and obtained a new six count indictment at the April 2000 grand jury, and trial proceeded on three counts of wanton endangerment and three counts of civil rights violations. During trial on January 23, 24, and 25, 2001, the Appellant requested an instruction on brandishing as a lesser included offense and an instruction on the right of a land owner to prohibit firearms on his premises. The lower court denied such requests. The Appellant was thereafter convicted of one count of wanton endangerment and sentenced to six months and one day.

On appeal to this Court, the Appellant contends that the lower court erred in (1) refusing to provide the Appellant's offered jury instruction on brandishing as a lesser included offense;[2] and (2) refusing to provide the Appellant's offered jury instruction on the right of a land owner to prohibit firearms on his premises.[3]

## II. Standard of Review

"As a general rule, the refusal to give a requested jury instruction is reviewed for an abuse of discretion." Syl. Pt. 1, in part, *State v. Hinkle,* 200 W.Va. 280, 489 S.E.2d 257 (1996). Likewise, in *State v. Lease,* 196 W.Va. 318, 472 S.E.2d 59 (1996), this Court explained that we review a "trial court's failure to give a requested instruction or the giving of a particular instruction under an abuse of discretion standard...." *Id.* at 322, 472 S.E.2d at 63; *see also State v. Guthrie,* 194 W.Va. 657, 671, 461 S.E.2d 163, 177 (1995). Syllabus point eleven of *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994), specifies:

remarks to them when he approached them concerning hunting on or near the "Bell Farm."

**2.** West Virginia Code § 61-7-11 (1994) (Repl. Vol.2000) provides in pertinent part as follows: "It shall be unlawful for any person armed with a firearm or other deadly weapon, whether licensed to carry the same or not, to carry, brandish or use such weapon in a way or manner to cause, or threaten, a breach of the peace." West Virginia Code § 61-7-12 (1994) (Repl.Vol.2000) provides as follows: "Any person who wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another shall be guilty of a felony...."

**3.** West Virginia Code § 61-7-14 (1989) (Repl. Vol.2000) provides in pertinent part as follows: "Notwithstanding the provisions of this article, any owner, lessee or other person charged with the care, custody and control of real property may prohibit the carrying openly or concealing of any firearm or deadly weapon on property under his or her domain...."

A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given · to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

In *Kessel v. Leavitt*, 204 W.Va. 95, 511 S.E.2d 720 (1998), *cert. denied* 525 U.S. 1142, 119 S.Ct. 1035, 143 L.Ed.2d 43 (1999), this Court explained that where the alleged error is based upon the trial court's refusal to give an offered instruction, this Court will presume that the lower court "acted correctly ... unless it appears from the record in the case ... that the instructions refused were correct and should have been given." *Id.* at 144, 511 S.E.2d at 769, *quoting Coleman v. Sopher*, 201 W.Va. 588, 602, 499 S.E.2d 592, 606 (1997) (internal quotations and citations omitted).

## III. Discussion

### A. Brandishing as a Lesser Included Offense in this Circumstance

■ The Appellant maintains that the lower court erred in refusing to provide the jury with an instruction on brandishing as a lesser included offense to wanton endangerment with a firearm. In syllabus point one of *State v. Jones*, 174 W.Va. 700, 329 S.E.2d 65 (1985), this Court explained the standard for determining whether a lesser included offense instruction should be provided, as follows:

The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense. (Citation omitted).

In *State v. Stalnaker*, 167 W.Va. 225, 279 S.E.2d 416 (1981), this Court noted that "a trial court must give an instruction for a lesser included offense when evidence has been produced to support such a verdict." *Id.* at 227, 279 S.E.2d at 417, *citing State v. Cobb*, 166 W.Va. 65, 272 S.E.2d 467 (1980). Further, "it is reversible error for a trial court to refuse to instruct a jury on lesser offenses charged in the indictment if there is any evidence in the record to prove such lesser offenses[.]" *State v. Wayne*, 162 W.Va. 41, 46, 245 S.E.2d 838, 842 (1978), *overruled on other grounds, State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983); *see also State v. Davis*, 205 W.Va. 569, 585, 519 S.E.2d 852, 868 (1999).

■ Likewise, in syllabus point five of *State v. Wright*, 200 W.Va. 549, 490 S.E.2d 636 (1997), this Court explained the legal analysis, as follows:

" 'The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.' Syllabus Point 1, *State v. Louk,* [169] W.Va. [24], 169 W.Va. 24, 285 S.E.2d 432 (1981)[, *overruled on other grounds, State v. Jenkins*, 191 W.Va. 87, 443 S.E.2d 244 (1994) ]." Syllabus Point 1, *State v. Neider*, 170 W.Va. 662, 295 S.E.2d 902 (1982).

In *Wright*, this Court had the opportunity to review the issue of whether an instruction on wanton endangerment should be provided as a lesser included offense to the crime of malicious assault. Adhering to the two-part inquiry formula enunciated in *Jones*, the *Wright* Court examined both legal and factual issues. In the legal analysis, the Court acknowledged that an offense is considered a lesser included offense only where it is impossible to commit the greater offense without having first committed the lesser offense. *Id.* at 554, 490 S.E.2d at 641. The Court also examined the elements of the two crimes and concluded that "[w]anton endangerment also carries a less severe penalty than malicious assault." *Id.* at 553, 490 S.E.2d at 640, *citing* 42 C.J.S. Indictments and Information § 218 (1991) ("An offense, in order to be a lesser

included offense, must be a less serious crime in terms of its classification and degree...").

With regard to the particular facts of the crime, the *Wright* Court reasoned: "Given the circumstances of this case, it would have been impossible for Mr. Wright to commit malicious assault with a single gunshot without committing wanton endangerment with a firearm." 200 W.Va. at 553, 490 S.E.2d at 640. Consequently, the Court found that the lower court had erred by refusing to provide the instruction regarding the lesser included offense.

The specific issue of whether wanton endangerment could include brandishing was addressed in *Hancock v. Commonwealth*, 998 S.W.2d 496 (Ky.App.1998), and the court explained that "examples of conduct which constitute wanton endangerment include discharging or brandishing firearms in public, using firearms or explosives in a grossly careless manner, and obstructing public highways." *Id.* at 498. The *Hancock* court also recognized that "wanton endangerment is not limited to specific types of conduct. It 'may be committed in many ways.'" *Id.,quoting Hardin v. Commonwealth*, 573 S.W.2d 657, 660 (Ky.1978).

Similarly, in *State v. Estrada*, 89 Wash. App. 1008, 1998 WL 46283 (1998), the court found "little merit in Mr. Estrada's argument that unlawful display of a firearm is not a lesser included offense of first degree reckless endangerment." *Id.* at *2. Citing *State v. Workman*, 90 Wash.2d 443, 584 P.2d 382 (1978),[4] the *Estrada* court recognized that "a crime is not a lesser included offense unless each of the elements of the lesser offense is a necessary element of the offense charged and the evidence supports an inference that the lesser crime was committed." *Id.* The court concluded that the lesser offense in that case

satisfied both conditions, explaining as follows:

> The elements of first degree reckless endangerment as charged are that the defendant recklessly discharge a firearm, from a motor vehicle, in a manner creating a substantial risk of death or serious injury to another person. Former RCW 9A.36.045(1). The element of carrying, exhibiting, displaying or drawing a firearm under RCW 9.41.270 is a necessary element of the greater crime. Likewise, the element of circumstances warranting alarm under the lesser offense is an inherent characteristic of acting in a reckless manner endangering others.

*Id.*

In the case sub judice, the Appellant introduced evidence tending to show that an instruction on brandishing, as a lesser included offense to wanton endangerment with a firearm, would have been appropriate under this factual scenario. Our examination of the legal issue must include an analysis of whether it would have been impossible for the Appellant to have committed the greater offense of wanton endangerment, under the facts as presented in this circumstance, without having first committed the lesser offense of brandishing. Our analysis must be premised upon the language of the statutes and the facts of this particular case. As syllabus point five of *Wright* instructs, "[a]n offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense." 200 W.Va. at 550, 490 S.E.2d at 637.

The brandishing statute, West Virginia Code § 61–7–11, provides that an individual commits brandishing if, while armed with a firearm or other deadly weapon, he carries, brandishes, or uses "such weapon in a way or manner to cause, or threaten, a breach of the peace."[5] By comparison, the wanton endan-

---

4. *Workman* held that unlawfully carrying a weapon is a lesser included offense of attempted first degree robbery. 584 P.2d at 385.

5. An illuminating discourse of the concept of "breach of the peace" was included in *State v. Steger*, 94 W.Va. 576, 119 S.E. 682 (1923), as follows:

> An interesting discussion of what constitutes a breach of the peace at common law will be found in *Ware v. Branch Circuit Judge*, 75 Mich. 488, 42 N.W. 997, wherein it was held that the use of foul, abusive, and insulting language in a dwelling house in the presence of the occupants, unaccompanied by threats and causing no expectation or fear of personal violence, is not a breach of the peace within the common-law definition of that term. The court said:

germent statute, West Virginia Code § 61–7–12, explains that an individual commits wanton endangerment if he "wantonly performs any act with a firearm which creates a substantial risk of death or serious bodily injury to another."

■ Thus, a comparison of the two statutes reveals that the offense of brandishing does not require the inclusion of any element not required by the offense of wanton endangerment. To have committed wanton endangerment, requiring the creation of a substantial risk of death or serious bodily injury, in the confrontation described by the parties in this case, the Appellant would had to have first carried, brandished, or used his weapon in a manner to threaten a breach of the peace. The state argues that brandishing is not necessarily an included offense because an assailant intent upon wanton endangerment might commit that crime by attacking a victim from behind the victim or otherwise out of a victim's line of vision. We reject that argument because it is equally clear that one may commit brandishing under like circumstances behind a victim or otherwise out of the victim's line of vision. The brandishing statute requires only that the individual carry, brandish, or use a deadly weapon in a manner to cause or threaten a breach of the peace. The fact that a victim may not immediately see the individual using a weapon in such a matter does not mean that the crime of brandishing has not been committed.

■ We find that it would have been impossible for the Appellant to have committed wanton endangerment without first committing brandishing. Accordingly, we hold that the offense of brandishing as defined by West Virginia Code § 61–7–11 is a lesser included offense within the definition of wanton endangerment under West Virginia Code § 61–7–12.[6] We find that there was ample evidence in the trial below to support an instruction on brandishing as a lesser included offense under the indictment returned below. The lower court abused its discretion by refusing to provide the brandishing instruction offered by the Appellant, and this case must be reversed on that assignment of error.

### B. Instruction on Right to Prohibit Firearms on Premises

The Appellant also contends that the lower court abused its discretion in failing to provide the Appellant's offered instruction on the right of a landowner, or in this case a land manager, to prohibit firearms on the premises. As quoted above, West Virginia Code § 61–7–14 permits any owner or person charged with the care of real property to "prohibit the carrying openly or concealing of any firearm or deadly weapon" on the property.

The Appellant contends that, as the individual charged with the control and management of the "Bell Farm," he had the statutory right to approach the hunters and inform them that they were not permitted to hunt on the property under his control. The Ap-

---

"The only cases of breach of the peace, not involving open disturbance in public places, and to the actual annoyance of the public at large, or persons employed and actually engaged in public functions, require personal violence, either actually inflicted or immediately threatened. There are, in some of the definitions, references to language tending to provoke a breach of the peace, and relator's claim is based on this. But the authorities have very plainly held that this covers nothing that is not meant and adapted to bring about violence directly. It is laid down, very positively, that insulting and abusive language does not come within the rule, but it must be threats of immediate violence, or challenges to fight, or incitements to immediate personal violence or mischief."
94 W.Va. at 581, 119 S.E. at 684; *see also State ex rel. State v. Gustke*, 205 W.Va. 72, 80–81, 516

S.E.2d 283, 291–92 (1999) (holding that driving under the influence in a breach of the peace); Syl. pt. 7, *State v. Long*, 88 W.Va. 669, 670, 108 S.E. 279, 280 (1921) (holding that a breach of peace "includes all violations of the public peace, order or decorum, such as to make an affray; threaten to beat, wound, or kill another, or commit violence against the person or property; contend with angry words to the disturbance of the peace; appear in a state of gross intoxication in a public place; recklessly flourish a loaded pistol in a public place while intoxicated; and the like").

6. We also emphasize that West Virginia Code §§ 61–7–11 and 61–7–12 appear as part of a legislative scheme dealing with unlawful uses of firearms.

pellant's primary contention appears to be that a jury instruction regarding such right should have been provided to explain the context of his concerns, rather than as an exoneration for any subsequent behavior which may have constituted brandishing or wanton endangerment. The Appellant testified that he sought to stop and question the hunters regarding their presence on the property. He contends that the requested instruction would have permitted the jury to place his actions within the context of statutorily-permissible behavior. The Appellant further contends that refusal of such instruction limited his ability to fully elaborate upon his contention that he was exercising the legitimate function of protecting the property under his control.

In response, the State contends that the issue of whether the Appellant had the right to prohibit the carrying of firearms on the property is irrelevant since the crime occurred off the immediate premises of the "Bell Farm" and involved Mr. Bell's use of a firearm.[7] The State maintains that there is no theory of the case which would require the requested instruction.

█ In syllabus point three of *State v. Miller,* 184 W.Va. 492, 401 S.E.2d 237 (1990), this Court explained: " " 'In this jurisdiction where there is competent evidence tending to support a pertinent theory of a case, it is error for the trial court to refuse a proper instruction, presenting such theory, when so requested." Syllabus, Point 4, *State v. Hayes,* 136 W.Va. 199 [67 S.E.2d 9] [1951].' Syl. Pt. 2, *State v. Smith,* 156 W.Va. 385, 193 S.E.2d 550 (1972)." The requested instruction, taken from the language of the statute, was obviously a correct statement of law, and it was not covered by the other instructions.

The statute upon which the instruction is based is clearly a part of the legislative scheme related to the open carrying of firearms and vests in property owners and those charged with the responsibility for safeguarding real property the clear right to require third parties not to carry or display firearms on such property. As such, the statute and the requested instruction provided a lawful premise for the Appellant's demand that the Eggletons not carry arms on the subject property and constituted a proper means of informing the jury of that lawful premise. The Appellant does not claim, nor would this Court, that the Appellant is entitled to this instruction as an excuse or justification for violation of the criminal statutes prohibiting the brandishing and/or wanton endangerment which allegedly occurred during the confrontation. Rather, the instruction provides the Appellant a means of demonstrating the legality and propriety of prohibiting persons from entering onto property while carrying firearms, supportive of the Appellant's contention that he was performing a duty of his employment. As such, the instruction appears to be germane to the Appellant's theory of defense. Upon any retrial of this cause occasioned by our decision to reverse the conviction for failure to instruct on the matter of a lesser included offense, the trial court should consider whether this instruction, if offered, is again justified by the evidence and theory or theories of defense.

### IV. Conclusion

Based upon the foregoing, this case is reversed and remanded based upon this Court's conclusion that the lower court abused its discretion in failing to provide the Appellant's requested instruction regarding brandishing as a lesser included offense. This matter is remanded for a new trial on a single count of wanton endangerment.

Reversed and Remanded With Directions.

---

**7.** The Appellant asserts that the evidence would support a finding that the road or lane was a right of way leading from the public road to the "Bell Farm" and, as such, was an integral part of the premises he was employed to manage. Apparently, the State contests this assertion. There is nothing in the record from which this Court can ascertain, as a matter of law, whether the access road or lane upon which this confrontation occurred was or was not an integral part of the land. We do not find that issue dispositive of this instruction issue.