# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.) No. 19-1012** (Berkeley County 18-F-359)

**Jerome Aldridge, Jr.,**
**Defendant Below, Petitioner**

**FILED**

**January 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jerome Aldridge, Jr., by counsel Matthew T. Yanni, appeals the October 30, 2019, order of the Circuit Court of Berkeley County sentencing him to nine months in jail for possession of marijuana and third-degree sexual assault; to be followed by an aggregate sentence of twenty-six to seventy-five years in prison for one count of delivery of marijuana to a minor; one count of delivery of marijuana; one count of sexual abuse in the first degree; two counts of sexual assault in the second degree; and two counts of sexual assault in the third degree. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response in support of the circuit court's order.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted on two counts of delivery of marijuana to a minor in violation of West Virginia Code § 60A-4-401(a)(ii) (Counts 1 and 2); two counts of sexual abuse in the first degree in violation of West Virginia Code § 61-8B-7(a)(1) (Counts 3 and 7); two counts of sexual abuse in the third degree in violation of West Virginia Code § 61-8B-9(a) (Counts 4 and 8); two counts of sexual assault in the second degree in violation of West Virginia Code § 61-8B-4(a)(1) (Counts 5 and 9); two counts of sexual assault in the third degree in violation of West Virginia Code § 61-8B-5(a)(2) (Counts 6 and 10); one count of wanton endangerment in violation of West Virginia Code § 61-7-12 (Count 11); two counts of assault in violation of West Virginia Code § 61-2-9(b) (Counts 12 and 13); and one count of possession with intent to distribute marijuana in violation of West Virginia Code § 60A-4-401(a)(ii) (Count 14). These fourteen counts regard the State's claim that on November 28, 2017, petitioner sexually abused and assaulted E.E. (the "victim"), a fifteen-year-old female neighbor. The victim told her school counselor about the incident, and the police were called. When the police arrested petitioner at his apartment, they

1

found two plastic bags of marijuana; scales; baggies; a cell phone; ammunition; weapons; a plate; a razor blade; a straw; and a powdery, white substance.

Pretrial, petitioner filed a motion to dismiss Counts 3 and 7 (both alleging first-degree sexual abuse) and Counts 4 and 8 (both alleging third-degree sexual abuse) on the ground that the charges were duplicative and violated the constitutional prohibition against double jeopardy. The State responded that the charges regarded separate offenses and that each required proof of different elements. The circuit court held petitioner's motion in abeyance "until the presentation of evidence [at trial]." Additionally, petitioner offered jury instructions to the circuit court and sought an instruction on second-degree sexual abuse regarding Counts 3 and 7 (charging first-degree sexual abuse). Petitioner also sought an instruction on third-degree sexual assault regarding Counts 5 and 9 (charging second-degree sexual assault).

Petitioner's trial commenced on August 19, 2019. the victim testified as follows: Prior to November 28, 2017, she smoked marijuana with petitioner almost every day. On November 28, 2017, petitioner called the victim after she had returned home from school and said he was coming to visit her. When petitioner arrived, the victim's mother was at work. Petitioner locked the door and told the victim to get a plate. Petitioner then went into the victim's mother's bedroom. When the victim brought the plate into the bedroom, petitioner put drugs on it. The victim testified that petitioner "told me to do them and I trusted him and he ha[d] never given me anything bad so I did." However, after she took the drugs, petitioner would not let her leave her mother's room, so she pushed petitioner in an attempt to leave the room. Petitioner then removed a gun from the back of his pants, put it on the nightstand, and told her "to chill out and everything was going to be fine and nothing was going to happen." Petitioner removed the victim's clothes and his clothes and then grabbed her hand and placed it on his penis. Thereafter, petitioner pulled the victim's mouth toward his penis and she put her mouth on it. After that, petitioner put his penis in her vagina. Soon thereafter, the victim's mother arrived at the house and began pounding on the locked front door. The victim was then fifteen years old.

The victim's mother testified as follows: She lived with the victim, and, at the time of the alleged crimes in this case, petitioner was a neighbor whom she had known since 2012. The victim's mother and petitioner had an off and on sexual relationship, and petitioner gave the mother marijuana. When she came home from work on November 28, 2017, she could not get in her apartment and pounded on the door. When the victim answered the door, she was naked and crying profusely. The victim's mother went to her bedroom, saw petitioner's shoes, pants, and underwear on the floor and petitioner naked and hiding under her bed. She told petitioner, "[Y]ou just raped my daughter, I should call the police." However, she did not call the police and, instead, called her boyfriend and told him to "hit that mother f--ker."

The mother's boyfriend, Dale Armentrout, testified as follows: He had known petitioner for four or five years. On November 28, 2017, the victim's mother called and asked him to come to her home. When he arrived, the victim's mother and victim were upset. The victim's mother told him to "go over there and talk to f--king [petitioner]." When he went to speak to petitioner, petitioner stepped out of his apartment with two guns tucked in his pants and said, "You know what, I've had it with this Bitch. I'm going to shoot the Bitch."

Following this testimony and the testimony from additional witnesses, petitioner moved for a judgment of acquittal on double-jeopardy grounds, claiming that if the victim had touched his penis, it would have been part of any oral sex that she allegedly performed upon him. Petitioner also argued that sexual abuse in the third degree is a lesser-included offense of sexual-abuse in the second degree. The State responded that the sexual abuse that arose from the victim's touching of petitioner's penis was "a completely separate event" from the sexual assault. The circuit court denied petitioner's motion.

Regarding Counts 7 and 8, petitioner asked the circuit court to dismiss those counts because the victim did not testify that petitioner touched her breasts. The State did not object to the dismissal of Counts 7 and 8. Petitioner then asked the court to dismiss Count 11 (alleging wanton endangerment) given that, when petitioner spoke with Dale Armentrout on November 28, 2017, the evidence showed that petitioner's pistols were tucked in his waistband. The State did not object to the dismissal of Count 11; however, the State requested a lesser-included offense instruction regarding brandishing. In response, the court dismissed Count 7 and 8, and, regarding Count 11, ruled in favor of a brandishing instruction.

During petitioner's case-in-chief, he testified as follows: He never went to the victim's apartment without the victim's mother being present and he did not go to the victim's apartment on November 28, 2017, until Dale Armentrout knocked on petitioner's door saying that petitioner had to come out right away and that the victim's mother was alleging petitioner did "X, Y, and Z." Petitioner also testified that he never invited himself into the victim's apartment, never gave the victim drugs, and never had a sexual encounter with the victim.

The jury found petitioner guilty of the following seven counts: Counts 1 and 2 (delivery of marijuana to a minor and delivery of marijuana); Count 3 (sexual abuse in the first degree); Court 4 (sexual abuse in the third degree); Count 5 (sexual assault in the second degree); Count 6 (sexual assault in the third degree); Count 9 (sexual assault in the second degree); Count 10 (sexual assault in the third degree); and Count 14 (simple possession).

Following trial, petitioner moved for a new trial and again asserted that the circuit court should have instructed the jury on the offenses of second-degree sexual abuse and third-degree sexual assault. On September 3, 2019, the circuit court denied petitioner's motion and thereby rejected petitioner's claim that second-degree sexual abuse is a lesser-included offense of first-degree sexual abuse and that third-degree sexual assault is a lesser-included offense of second-degree sexual assault.

By order entered October 30, 2019, the circuit court sentenced petitioner to nine months in jail for sexual assault in the third degree and possession of marijuana, to be followed by twenty-six to seventy years in prison for petitioner's remaining convictions. The court also imposed a fifty-year period of supervised release following petitioner's release from prison and lifetime sexual offender registration. Petitioner now appeals.

We have held that,

> "In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the

3

circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a de novo review."

Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). Further, "[t]his Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*." Syl. Pt. 1, in part, *State v. Grimes*, 226 W. Va. 411, 701 S.E.2d 449 (2009).

Petitioner raises two assignments of error on appeal. In his first assignment of error, petitioner, citing double jeopardy principles, argues that it was error for the circuit court to refuse to dismiss Counts 3 (sexual abuse in the first degree) and 4 (sexual abuse in the third degree) after the jury found petitioner guilty of Counts 5 (sexual assault in the second degree) and 6 (sexual assault in the third degree) when the evidence showed that any touching by the victim of petitioner's penis was entirely ancillary to the oral sex petitioner forced the victim to perform upon him.

We disagree. At the trial in this case, the victim testified that petitioner grabbed her hand and made her touch his penis and then petitioner pushed her head toward his penis, and she put his penis in her mouth. For those acts, the jury convicted petitioner of Count 3 (first-degree sexual abuse), Count 4 (third-degree sexual abuse), Count 5 (second-degree sexual assault), and Count 6 (third-degree sexual assault). Three times—prior to trial, at the close of all evidence, and prior to sentencing—petitioner moved to dismiss Counts 3 and 4. The court denied that motion each time based on *State v. Sayre*, 183 W. Va. 376, 395 S.E.2d 799 (1990). In *Sayre*, this Court concluded that a single act of sexual intercourse could be punished as both sexual assault in the second degree and sexual assault in the third degree, stating:

> West Virginia's second and third-degree sexual assault statutes are "directed to separate evils" and intended to remedy "diverse societal harms." The second-degree statute is designed simply to punish and deter forcible rapes. The age of either party is irrelevant. The third-degree statute is intended to punish and deter those people sixteen years of age or older who would take sexual advantage of children at least four years younger than them. Thus, when a person forcibly rapes a child, he may, in fact, separately violate each statute.

183 W. Va. at 379-80, 395 S.E.2d at 802-03. Nevertheless, petitioner argues that *Sayre* does not allow him to be found guilty of Count 3 (first-degree sexual abuse) and Count 4 (third-degree sexual abuse) because the victim touched petitioner's penis just moments before she had oral contact with it, an offense charged and punished in Count 5 (sexual assault in the second degree) and Count 6 (sexual assault in the third degree).

Petitioner argues that the key to determining if one or multiple sexual criminal acts has occurred is a question of time. In support, he cites to *State v. Reed*, 166 W. Va. 558, 276 S.E.2d 313 (1981), in which the Court ruled that it violated double-jeopardy protections when the defendant was convicted of felony first-degree sexual abuse and misdemeanor sexual misconduct for one act of intercourse, because both crimes required the same evidence. The *Reed* Court found that there was "no evidence of two distinct acts of intercourse separated by even a few minutes"

4

and that the sexual abuse was ancillary to the sexual misconduct. *Id.* at 565, 276 S.E.2d at 319. Petitioner also relies upon *State v. Davis*, 180 W. Va. 357, 376 S.E.2d 563 (1988), where the Court found that one act of intercourse that resulted in a conviction for abduction with intent to defile and for first-degree sexual abuse violated double jeopardy because "the detention and movement of the victim in this case was merely intended to facilitate the commission of the sexual assault. The entire transaction took no more than 15 to 30 minutes." *Id.* at 361, 376 S.E.2d at 567. Finally, petitioner cites to *State v. Fortner*, 182 W. Va. 345, 387 S.E.2d 812 (1989), where this Court discussed *Reed* and *Davis* and summarized those cases as holding that double jeopardy principles are violated where the defendant is "charged with a single act of unlawful sexual intercourse and a single act of unlawful sexual touching," and "the unlawful touching was merely incidental to the consummation of the act of intercourse." *Fortner* at 363, 387 S.E.2d at 830. In *Fortner*, we found the defendant's multiple convictions did not violate double jeopardy because the victim was subjected "to numerous separate acts of intercourse and sexual contact throughout the evening." *Id.* at 364, 387 S.E.2d at 830.

Petitioner argues that, in his case, the victim touched his penis immediately prior to performing oral sex upon him, and that this single act properly resulted in his conviction for second-degree and third-degree sexual assault. However, he contends that his convictions for first-degree and third-degree sexual abuse violate double jeopardy protections and cannot stand because they involved the same contact at the same time as the sexual assault charges.

West Virginia's Double Jeopardy Clause provides, in part, that "[n]o person shall . . . be twice put in jeopardy of life or liberty for the same offence." W. Va. Const. art. III, § 5. "The Double Jeopardy Clause . . . provides immunity from further prosecution where a court having jurisdiction has acquitted the accused. It protects against a second prosecution for the same offense after conviction. It also prohibits multiple punishments for the same offense." Syl. Pt. 1, *Conner v. Griffith,* 160 W. Va. 680, 238 S.E.2d 529 (1977). The applicable rule is that

> "[w]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

Syl. Pt. 4, *State v. Gill*, 187 W. Va. 136, 416 S.E.2d 253 (1992). However, "[w]here the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." *Garrett v. United States*, 471 U.S. 773, 778 (1985).

We reject petitioner's argument that the evidence in this case of sexual abuse in the first and third degrees under West Virginia Code § 61-8B-7 and -9, and sexual assault in the second and third degrees under West Virginia Code § 61-8B-4 and -5, is the same and, therefore, violates double jeopardy. In *Reed* and *Davis*, we found double jeopardy violations because the prosecutor in both cases showed abusive sexual contact that was entirely ancillary to the criminal intercourse. However, in this case, the evidence establishes that petitioner forced the victim to engage in sexually abusive contact that was separate and distinct from the sexual assault. The West Virginia Legislature intended for acts of sexual abuse to be offenses separate from acts of sexual assault.

5

Here, petitioner entered the victim's home, went to the victim's mother's bedroom, and offered drugs to the victim which she took. However, when the victim then attempted to leave her mother's bedroom, petitioner stopped her, removed her clothing and his, and then he forced her to touch his penis. That contact, standing alone, constituted first-degree sexual abuse in violation of West Virginia Code § 61-8B-7, which provides, in part:

> (a) A person is guilty of sexual abuse in the first degree when:
>
> (1) Such person subjects another person to sexual contact without their consent, and the lack of consent results from forcible compulsion; or
>
> (2) Such person subjects another person to sexual contact who is physically helpless[.]

Moreover, that conduct constituted third-degree sexual abuse of the fifteen-year-old victim in violation of West Virginia Code § 61-8B-9(a), which provides that "[a] person is guilty of sexual abuse in the third degree when he subjects another person to sexual contact without the latter's consent, when such lack of consent is due to the victim's incapacity to consent by reason of being less than sixteen years old."

After petitioner forced the victim to touch his penis, he forced her to perform oral sex upon him. Unlike the hand-to-penis contact (which was sexual abuse), this contact constituted sexual assault and gave rise to petitioner's conviction on Counts 5 and 6. Count 5 charged petitioner with second-degree sexual assault for violating West Virginia Code § 61-8B-4(a)(1), which provides that "[a] person is guilty of sexual assault in the second degree when . . . [s]uch person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion[.]" Count 6 charged petitioner with third-degree sexual assault for violating West Virginia Code § 61-8B-5(a)(2), which provides:

> (a) A person is guilty of sexual assault in the third degree when: . . .
>
> (2) The person, being sixteen years old or more, engages in sexual intercourse or sexual intrusion with another person who is less than sixteen years old and who is at least four years younger than the defendant and is not married to the defendant.

The Legislature established four separate offenses, and the record supports the jury's finding that petitioner separately committed the elements of each of those offenses. Accordingly, we find no double jeopardy violation in this case.

In petitioner's second assignment of error, he challenges the circuit court's jury instructions. Petitioner's argument is spare, at best, but he appears to argue that the circuit court should have given the lesser-included offense instructions petitioner offered for Counts 3, 5, and 9.

"As a general rule, a refusal to give a requested instruction is reviewed for an abuse of discretion." Syl. Pt. 2, *State v. Brock*, 235 W. Va. 394, 774 S.E.2d 60 (2015) (quoting Syl. Pt. 1, in part, *State v. Hinkle*, 200 W.Va. 280, 489 S.E.2d 257 (1996)). Moreover,

6

A trial court's refusal to give a requested instruction is reversible error only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. Pt. 11, *State v. Derr*, 192 W. Va. 165, 451 S.E.2d 731 (1994). Finally, in syllabus point 1 of *State v. Louk*, 169 W. Va. 24, 285 S.E.2d 432 (1981), this Court held that:

The test of determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without first having committed the lesser offense. An offense is not a lesser included offense if it requires the inclusion of an element not required in the greater offense.

Below, petitioner asserted that the victim might have been "mentally incapacitated" given that he gave her an unknown drug prior to his sexual abuse and assault. Therefore, petitioner sought instructions on what he asserted are lesser-included offenses. Specifically, regarding Count 3 (alleging first-degree sexual abuse), petitioner requested an instruction on the offense of second-degree sexual abuse on the theory that the victim was mentally incapacitated at the time of the crime. For Counts 5 and Count 9 (both alleging second-degree sexual assault), petitioner requested an instruction on the offense of third-degree sexual assault also on the theory that the victim was mentally incapacitated at the time of the crime.

West Virginia Code § 61-8B-1(4) defines "mentally incapacitated" and § 61-8B-1(5) defines "physically helpless" as follows:

(4) "Mentally incapacitated" means that a person is rendered temporarily incapable of appraising or controlling his or her conduct as a result of the influence of a controlled or intoxicating substance administered to that person without his or her consent or as a result of any other act committed upon that person without his or her consent.

(5) "Physically helpless" means that a person is unconscious or for any reason is physically unable to communicate unwillingness to an act.

The circuit court instructed the jury on the definition of "physically helpless," but refused to instruct the jury on the definition of "mentally incapacitated." By way of explanation, the court said,

I think a reasonable juror could conclude that we don't know the substance . . . she was given and we don't know what the [e]ffect that had. But she testified she didn't do anything in response to him putting his hand - putting her hand on his penis and other acts. So the jury may conclude that whatever she ingested did make her physically helpless. That's why I am including the instruction. I think a reasonable juror could conclude that is the reason she didn't resist in other ways.

7

Thus, due to the lack of evidence regarding whether the victim was mentally incapacitated, the court refused to instruct the jury on second-degree sexual abuse and third-degree sexual assault. The circuit court also refused the instructions because the State did not charge petitioner with those crimes.

Petitioner further argues that his convictions for sexual assault and sexual abuse should be reversed under *State v. Bell*, 211 W. Va. 308, 565 S.E.2d 430 (2002). In *Bell*, the defendant was charged with three counts of wanton endangerment for pointing a gun at a man and his two sons and threatening to shoot them. *Id.* at 310, 565 S.E.2d at 432. At trial, Mr. Bell sought a brandishing instruction as a lesser-included offense of wanton endangerment, but the trial court refused the instruction. This Court reversed and found that "it would have been impossible for [Mr. Bell] to have committed wanton endangerment without first committing brandishing." *Id.* at 313, 565 S.E.2d at 435.

As we understand petitioner's somewhat-confusing argument, he contends that the instant case is comparable to *Bell*, and that any offense requiring the victim be "mentally incapacitated" is a lesser-included element of offense to one which requires the victim to be "physically helpless." When the circuit court instructed the jury on first-degree sexual abuse (which, under West Virginia Code § 61-8B-7(a)(2), criminalizes sexual abuse of a victim "who is physically helpless"), petitioner asserts that the circuit court should have also instructed the jury on second-degree sexual abuse (which, under West Virginia Code § 61-8B-8(a), criminalizes sexual abuse of a victim "who is . . . mentally incapacitated"). Likewise, when the circuit court instructed the jury on second-degree sexual assault (which, under West Virginia Code § 61-8B-4(a)(2), criminalizes sexual assault with a "person who is physically helpless"), petitioner maintains that the circuit court should also have instructed the jury on third-degree sexual assault (which, under West Virginia Code § 61-8B-5(a)(1), criminalizes sexual assault of a person "who is . . . mentally incapacitated").

We reject petitioner's argument because the evidence adduced at trial does not support the instructions sought by petitioner. Although there is evidence that petitioner gave the victim some substance, there is nothing establishing that, due to ingesting the substance, the victim was "mentally incapacitated" because she was "rendered temporarily incapable of appraising or controlling . . . her conduct as a result of the influence of a controlled or intoxicating substance administered to that person without . . . her consent." W. Va. Code § 61-8B-1(4). Proof that the victim was "mentally incapacitated" is required to show second-degree sexual abuse or third-degree sexual assault. We cannot say those offenses are lesser-included offenses of first-degree sexual abuse or second-degree sexual assault because they require the inclusion of an element not required in the greater offenses. Hence, we find that the circuit court did not abuse its discretion when it refused to give the instructions offered by petitioner.

For the foregoing reasons, we affirm circuit court's October 30, 2019, sentencing order.

Affirmed.

**ISSUED:** January 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton